CHARTER COMMUNICATIONS, INC., a Delaware corporation; Charter Communications Properties, LLC; Paul G. Allen, Plaintiffs–Appellees,

v.

COUNTY OF SANTA CRUZ, Defendant–Appellant.

Nos. 01–15846, 01–16975.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2002.

Filed Sept. 20, 2002.

Robert S. Bower (argued) and Todd O. Litfin, Rutan & Tucker, Costa Mesa, California, for the defendant-appellant.

Julia M.C. Friedlander (argued) and Lisa S. Gelb, City of San Francisco, San Francisco, California, for amici curiae City and County of San Francisco, on behalf of the defendant-appellant.

Richard R. Patch (argued) and A. Marisa Chun, Coblentz, Patch, Duffy & Bass, San Francisco, California, for the plaintiffs-appellees.

Jeffrey Sinsheimer, California Cable Television Association, Oakland, California; National Cable & Telecommunications Association, Washington, D.C.; and American Cable Association, Pittsburgh, Pennsylvania, amici curiae, on behalf of the plaintiffs-appellees.

Before HAWKINS and SILVERMAN, Circuit Judges, and RESTANI,* Judge.

HAWKINS, Circuit Judge.

These cases surround one central issue: did Santa Cruz County reasonably withhold consent to a change in ownership of a cable franchise? Because we determine the County's denial of consent was reasonable and lawful, we reverse the district court's decision on the merits, mooting the issue of attorney's fees in the companion case.

---

* The Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

## I. FACTUAL BACKGROUND

The core dispute here involves a lengthy set of negotiations between the County and Charter. While time-consuming and intensive, these negotiations boil down to whether the County's requests for financial and other information from Charter were reasonably related to the exercise of the County's approval authority. A full version of the negotiations can be found in the district court opinion, *Charter Comms. Inc. v. County of Santa Cruz*, 133 F.Supp.2d 1184, 1187–1200 (N.D.Cal.2001).

In brief: in 1998, Microsoft co-founder Paul Allen sought acquisition of Charter Communications, Inc. ("CCI"), which owned a subsidiary, Charter Communications LLC ("Charter").[1] Charter had a cable television franchise with the County of Santa Cruz ("the County"); the franchise was administered by the County Board of Supervisors. The County's consent to the change in ownership was necessary for CCI to operate Charter's cable franchise. Under the relevant agreement, such consent could not be unreasonably denied.

After Charter submitted the appropriate forms,[2] the County became concerned, *inter alia*, that the price Allen was paying might impact the level and cost of service to constituents in the franchise service area; the County thus sought further detailed information from Charter. Charter complied but later balked when the County sought still more information. When it became clear that Charter would not provide the additional information, the County Board formally decided, without prejudice, to withhold consent to the change in Charter's ownership. The County made detailed findings in support of its decision. When subsequent efforts to resolve the dispute failed, Charter, CCI, and Allen filed suit in district court. Having lost in district court, the County now appeals the district court's two principal conclusions: first, that the County unreasonably withheld consent and, second, the award of attorney's fees to Charter.[3]

## II. STANDARD OF REVIEW

■ The district court's findings of facts are reviewed for clear error and its legal conclusions are reviewed de novo. *Dolman v. Agee*, 157 F.3d 708, 711 (9th Cir. 1998). Mixed questions of law and fact are generally reviewed de novo, *Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir.2000), although to the extent that a mixed question presents an "essentially" factual inquiry, then review is for clear error. *Koirala v. Thai Airways Int'l Ltd.*, 126 F.3d 1205, 1210 (9th Cir.1997). Because the ultimate question is whether the County could reasonably have denied its

---

1. Unless there is a need to specify otherwise, we refer generically to the plaintiffs-appellees in this action as "Charter."

2. Federal law recognizes the power of an LFA to approve transfers but imposes certain regulations governing this process. One such regulation, promulgated by the Federal Communications Commission ("FCC"), requires the use of a specific form, Form 394, to be used to seek approvals from franchising authorities. *See* 47 C.F.R. 76.502.

3. Charter contended at trial that the County acted unlawfully, and therefore unreasonably, in its attempts to gather information beyond what was permitted by Section 617 of the Cable Act and the FCC regulations. The district court agreed with Charter. We do not. As we explain in the analysis, the district court's obligation was to review the legislative findings of the County in its Denial resolution and to examine whether substantial evidence supported any one of the reasons offered by the County. Because the record substantially supports at least some of the reasons offered by the County, we see no reason for either the district court or this panel to reach the issues regarding the Cable Act.

consent under the circumstances, a mixed question arises; this question is not an "essentially factual" inquiry, though, and therefore this panel assesses the district court's conclusions under the de novo standard.

## III.  SUMMARY OF ARGUMENTS

### The County's Position

The County contests the district court's application of the standard of review during the bench trial, as well as the First Amendment-related decisions.  The County's theory on appeal is that under its state law contract claim, Charter must show that the County acted arbitrarily or without evidentiary support in carrying out its legislative function by denying consent. The County relies upon a long line of authorities requiring reviewing courts to accord legislative determinations proper deference.  It argues that: instead of showing deference, the district court undertook its own independent review, and in making its decision, the district court erred in interpreting the Cable Act of 1992 as precluding the County from making these kinds of inquiries of a transfer applicant; to compound error, the district court, after finding for Charter under the contract claim, addressed constitutional claims that appear to have been unnecessary for resolution of the case; once it addressed the constitutional claims, the County asserts, the district court misapplied the appropriate standard and then held that the County's cable ordinance was unconstitutionally vague, despite Charter's prior waiver of any objection to the ordinance.

### Charter's position

Charter's argument is that the County was entitled to request only reasonable information, and because the information the County was seeking went well beyond what the law permitted, the County acted unreasonably in propounding its requests and denying its consent on the basis of not having received answers to its requests. Charter also accuses the County of improperly conditioning its consent upon illegal fees or concessions:  *e.g.,*  a $500,000 mitigation fee, prefunding for a due diligence survey, and a long-term rate freeze. Because its expression was curtailed by the regulation of the cable franchise, Charter argues that the County's behavior amounts to a violation of the First Amendment.

## IV.  ANALYSIS

We begin by focusing on the central question: was the County's denial of consent unreasonable?  The district court said yes, finding that the County's denial was unreasonable and unlawful under the contract, the First Amendment, and the Cable Act and its FCC implementing regulations; consequently, the County's decision to deny consent was an *unreasonable* withholding of consent, thus constituting a material breach of the Franchise Agreement, which only allows for reasonable withholdings of consent.  In reviewing the district court's judgment, we must answer a preliminary question: is the County owed any deference to its determinations of what is reasonable under the circumstances?

*Deference*

■  The franchise agreement at issue places the discretion to approve the transfer in the County's hands.  When reviewing disputes emerging from this franchise agreement, a court must determine whether the County could have deemed it reasonable to deny consent;  this is a much more forgiving standard than whether the district court judge would have denied consent himself if he were acting as the County's agent.

We note that in assessing the reasonableness of the County's decision, we are reviewing a discretionary decision of the County Board of Supervisors, a legislative body. As Charter concedes, grants, renewals, and consents to rate increases are all legislative acts "because they involve policy decisions regarding the terms and conditions of the use of the public rights-of-way." Charter cites no case law for the proposition that consents to transfers are treated differently, *i.e.*, less deferentially, by courts. It argues that the County merely administers a contract in consenting to a transfer of ownership.

This characterization is wrong. As the County points out, if renewals are legislative, even though they involve the evaluation of a known entity, a transfer of ownership should, a fortiori, be viewed as a legislative action also, since the County must assess "a new entity operating under different financial and management circumstances." Moreover, the agreement between the parties incorporates the County Cable Ordinance, which, as a legislative act, operates for the benefit of all in the County.

◼ The County's position is further strengthened by case law indicating that a county's discretion is not limited by an agreement that contemplates future discretionary approvals. *See Santa Margarita Area Residents Together v. County of San Luis Obispo*, 84 Cal.App.4th 221, 227, 233, 100 Cal.Rptr.2d 740 (2000). A gov-

ernment's discretion is treated deferentially by courts especially when its requests for information are necessary to evaluate an application for government privileges; a denial of that privilege is hardly arbitrary when a government's information request is refused. *Gifford v. City of Los Angeles*, 88 Cal.App.4th 801, 806, 106 Cal. Rptr.2d 164 (2001). This is not to say that government bodies can elicit information of any kind or any quantity, but that the discretion within which the government operates is broad.[4]

The structure and substance of the district court's decision render apparent that no such deference was accorded; rather, the district court failed to address many of the reasons proffered by the County. Instead of merely asking whether the County's reasoning was fairly debatable, the district court substituted its judgment for the County's. Precedent, however, commands that courts should not stray from a deferential standard in these contexts, even when First Amendment rights are implicated through secondary effects. *See City of Los Angeles v. Alameda Books*, 535 U.S. 425, 122 S.Ct. 1728, 1736, 152 L.Ed.2d 670 (2002) (local government may, in furtherance of substantial governmental interests, rely on evidence "reasonably believed to be relevant"); *see also Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 678, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (the government's "interest in being free from intensive judicial supervision of its daily management functions [requires that]

---

4. Even if we viewed the County Board's action here as an administrative matter, rather than a legislative one, deference is owed under traditional administrative law principles. Seen in this way, whether the County denied consent reasonably is a question governed not by a preponderance of evidence standard, but rather a substantial evidence test. *See In re Van Ness Auto Plaza*, 120 B.R. 545, 546 (Bkrtcy.N.D.Cal.1990), *cited with approval in Ferrari N. Am. Inc. v. Sims (In re R.B.B. Inc.)*, 211 F.3d 475, 477–78 (9th Cir.2000) ("withholding of consent is reasonable if it is based on factors related to the proposed assignee's performance as a dealer and is supported by substantial objective evidence."). The *Van Ness* court also noted that in determining the suitability of transfers of franchisees, courts ought to "be somewhat cautious in requiring the[franchising authority] to enter into such a relationship involuntarily." *Id.* at 548–49.

. . . deference is therefore due to the government's reasonable assessments of its interests"); *One World One Family Now v. Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996).

Under this deferential standard, the County's denial of consent should be upheld as long as there is substantial evidence for any one sufficient reason for denial. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (attacks on legislative arrangements have burden of refuting each conceivable basis that might support it); *Desmond v. County of Contra Costa*, 21 Cal.App.4th 330, 336–37, 25 Cal. Rptr.2d 842 (1993) ("As long as the Board made a finding that any one of the necessary elements enumerated in the ordinance[ ] was lacking, and this finding was itself supported by substantial evidence, the Board's denial of appellant's application must be upheld."); *Saad v. City of Berkeley*, 24 Cal.App.4th 1206, 1214, 30 Cal.Rptr.2d 95 (1994) ("The burden is on the petitioner to show there is no substantial evidence whatsoever to support the findings of the board."). The district court did not examine whether all of the reasons detailed in the County's extensive Denial Resolution were spurious or unlawful. This was mistaken. *Cf. United States R R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) ("Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course,'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision,' because this Court has never insisted that a legislative body artic-

ulate its reasons for enacting a statute.") (internal citation omitted).

We must therefore examine whether any one of the reasons offered by the County Board in its decision and attached exhibits survives scrutiny under a deferential standard.

*Was There Sufficient Basis for the County's Decision to Deny Consent Without Prejudice?*

■ The County's Denial Resolution explained its decision to deny consent based on various factors. One was Charter and Allen's failure to affirmatively demonstrate financial qualifications to operate a cable system. In its submissions, Charter offered Paul Allen's personal "balance sheet" as evidence for his financial qualifications to take over the obligations of the franchise. However, at no time were Allen's personal assets contractually pledged in support of performance of the franchise obligations. The ability of a cable operator to adequately service the franchise throughout its term is a legitimate concern. But the district court did not address this concern or the testimony of a financial expert who testified that the materials submitted by Charter were insufficient to answer questions about liquidity or to determine Allen's true net worth.[5] Instead, the district court conducted its own analysis, announcing that in light of Allen's substantial wealth and the equity-only nature of the deal, his financial qualifications were incontrovertibly established.[6] We conclude that it was not unreasonable for the County to be concerned about Allen's true net worth and about the relationship

---

**5.** Charter claims that this expert was discredited on cross-examination, but the district court did not find this to be the case.

**6.** Charter's briefs do not even mention, let alone adequately respond to, the issue of

whether Allen's wealth was contractually obligated. In so doing, Charter makes the same error the district court did: ignoring a justifiable reason identified by the County as the basis for its decision.

of that wealth to the viability of the enterprise.[7]

■ The district court also failed to give deference to the County's articulated concern for keeping stable the subscriber rates in the future. Allen's offer, based on a per subscriber basis, was incontrovertibly and substantially higher than the market price. A high price might imperil the possibility of achieving a reasonable return on equity and thereby jeopardize the company's financial health, the stability of rates, and the quality of service. Fear of this high price then is also a legitimate concern. Nonetheless, the district court rejected this concern, reasoning that the "normal" fear would be whether there would be enough cash flow to service debt, and because there was no debt, there was no cause for concern, and therefore no cause for the information requests that would generate reliable inferences about prospective rates of return. *Charter*, 133 F.Supp.2d at 1211.

Experts from both sides, however, testified that rates of return on equity are key factors in analyzing transactions of this type. This suggests that the County's concerns were reasonable. In a world where cable operators have scaled back franchises because "the initial franchise was economically unviable," House Rep. No. 98–934 at 21, *reprinted in* 1984 U.S. Code Congressional & Administrative News at 4659, and where courts have in the past held that it would be unconstitutional for a government to prevent a utility company from collecting a constitu-tionally reasonable rate of return on their investments, *see Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 596 (6th Cir. 2001), it could hardly be unreasonable for the County to be worried about the long-term viability of the Allen purchase and its effects on the County's responsibility to assure a stable cable franchise for its citizens.[8] Nonetheless, the district court decided due diligence was improper, largely because few other local franchising authorities undertook this review. But as the amicus brief submitted by a host of local franchising authorities (LFAs) and the National League of Cities points out, this kind of due diligence does not typically occur, not because it is unnecessary but because the limited resources of local governments often prevent such scrutiny.

■ The County government, serving as steward of the public good, is entitled to be properly concerned about the long term consequences of a significantly above market-value purchase of a cable provider. While it is true that under the then-current FCC rules, Charter would not have been able to raise rates on this basis, those rules are subject to change; indeed, the rules have already been amended and may be amended again. *See* Brief of County Amici at 16–17.

The concerns we have highlighted here, which were articulated by the County in its denial of consent, were sufficient to justify the County's decision. Although we do not endorse every drib and drab of

---

7. We also observe that Charter had itself commissioned a privately-prepared due diligence study that would have satisfied virtually all of the County's requests for information. At argument, the County's lawyer said that had Charter turned over that study, instead of petulantly drawing a line in the sand, it would have sufficed. The County only found out about the study during discovery.

8. *Compare Guntert v. City of Stockton*, 43 Cal. App.3d 203, 215–217, 117 Cal.Rptr. 601 (1974), where the reviewing court found that the city acted *arbitrarily by failing to attain enough information* about the financial viability of a developer.

the County's actions during its negotiations with Charter, we cannot say the County acted without a rational basis or without substantial evidence for its decision to deny consent without prejudice. We therefore reverse the district court's judgment on these grounds and vacate its decision. We note that even if we thought the County had acted unreasonably, our view would be deferential not only because precedent so commands, but also because methods exist to promote self-correction in the future: citizens can vote out their local representatives and cable operators can refuse to enter into franchise agreements with notoriously difficult LFAs.

■ Charter attempts to persuade us of the County's bad faith behavior by pointing to the County's apparently unusual request that Charter fund and have prepared a due diligence study. But the relative oddity of this precaution is not of much moment given the deference accorded to legislative actions. More to the point, merely because the request is inconsistent with custom does not mean that it is in anyway unreasonable—think of Judge Hand's famous opinion in *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir.1932) (because an entire industry may be negligent, industry custom is only some evidence of what is reasonable).

■ Finally, since the County's judgment was reasonable, it necessarily follows that its decision to deny the transfer on the basis of that judgment was supported by a legitimate governmental interest. Charter voluntarily entered into an agreement under which the County had to approve any transfer of the franchise, and thus, to that extent, waived its right to claim that a denial of a transfer violated its First Amendment rights.[9] We therefore need not reach the other issues addressed by Charter and the district court.

## V. CONCLUSION

The district court's judgment on the underlying dispute is reversed. Our decision moots the district court's award of attorney's fees to Charter. The district court's decisions in both cases under review here are vacated.

**REVERSED.**

9. Our Court has expressly recognized that "First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent." *See Leonard v. Clark,* 12 F.3d 885, 889–90 (9th Cir.1993) ("If the Union felt that First Amendment rights were burdened by [the contract provision], it should not have bargained them away and signed the agreement."). Our Court will not enforce a waiver "if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Id.* That circumstance does not apply here, as public policy favors the government's decision to be careful in its role as steward. Moreover, in a case like this one, where sophisticated parties are represented by counsel, we think Charter was aware of what it was getting itself into. *See Paragould Cablevision, Inc. v. City of Paragould, Ark.,* 930 F.2d 1310, 1314 (8th Cir. 1991) (waiver of constitutional rights can be implied from terms and conditions of a contract where party claiming right is sophisticated and represented by counsel; "Cablevision forgets that it bargained for its franchise agreement. Cablevision voluntarily entered into the franchise agreement, presumably for its own economic gain. The forum for protecting its free speech rights was the bargaining table, not the courtroom....").