178 P.3d 1176

Juan Carlos Franco FLORES, on his own behalf and as Personal Representative of the Estate of Bartolo Franco Molina and Virginia Flores Duran, deceased; Consuelo Franco Flores; Rosio Lizette Franco Flores and Maria Irma Franco Flores, surviving children of Bartolo Franco Molina and Virginia Flores Duran, deceased; Norma Alicia Franco Flores, on her own behalf and as a surviving child of Bartolo Franco Molina and Virginia Flores Duran, deceased, Plaintiffs–Appellees,

and

Scripps–Howard Broadcasting Co., dba KNXV–TV, and Abbie Boudreau, Intervenors–Appellees,

v.

COOPER TIRE AND RUBBER COMPANY, a Delaware corporation, Defendant–Appellant.

No. 1 CA–CV 06–0655.

Court of Appeals of Arizona, Division 1, Department A.

March 25, 2008.

Richard A. Castillo, Phoenix, Attorney for Plaintiffs–Appellees.

Steptoe & Johnson, LLP by David J. Bodney, Peter S. Kozinets, Karen J. Hartman-Tellez, Phoenix, Attorneys for Intervenors–Appellees.

Lewis and Roca by Foster Robberson, Kimberly Demarchi, Karen Killion, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 Cooper Tire and Rubber Company ("Cooper") challenges the superior court's

ruling that Abbie Boudreau ("Boudreau"), a reporter for Scripps–Howard Broadcasting, dba KNXV–TV ("KNXV"), did not breach the court's confidentiality order when the television station broadcast her story about the safety of Cooper's tires. In resolving this appeal, we address three issues: (1) whether the court properly balanced the reporter-informant privilege and Cooper's property interests when it fashioned an *ex parte, in camera* procedure to determine if Boudreau obtained information about Cooper in violation of a confidentiality order; (2) whether the court erred in holding that the reporter-informant privilege had not been waived; and (3) whether the court's procedure was consistent with our prior decision order. For the following reasons, we affirm the trial court's ruling.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 The plaintiff, Juan C.F. Flores, sued Cooper on his own behalf and as the personal representative of his parents' estate. He alleged that a Cooper tire had a tread separation and caused his parents' car to roll over, which resulted in their deaths.

¶ 3 Boudreau attended portions of the trial. On September 20, 2005, the trial court informed Boudreau about a confidentiality order that had been entered mandating that all "[t]rial exhibits that contain confidential information will not become part of the public file, and will not be accessible to the public." Boudreau agreed in writing to be bound by the order even though she did not see it.

¶ 4 Boudreau asked the trial court if she could report things she learned after the trial. The court responded in part: "the answer to that is probably no." The court also told Boudreau to direct questions on what she could and could not report to Cooper's lawyer:

There are things you can obviously report and talk about, but when it comes to the specific documents that are the subject of

these confidentiality orders, you cannot disclose their content to the public. If you need to find out which specific ones there are, I invite you after the proceedings to talk to defense counsel ... and they will be able to advise you.

¶ 5 Later that day Boudreau learned from Cooper's counsel, Walter Yoka, that documents containing "formulas" or "numbers" were trade secrets subject to the confidentiality order. He also advised her to contact Patricia Brown, Cooper's Vice President of Global Branding and Communications, for answers to questions about confidential documents.

¶ 6 Weeks after a settlement,[1] a confidential source provided Boudreau with documents related to the safety and durability of Cooper's tires ("the Documents"). The Documents purportedly were authored by Cooper employees during the 1990s. They had no confidentiality notations or Bates[2] numbers. KNXV subsequently used two of the Documents to prepare a story concerning the safety of Cooper's tires, this lawsuit, and other products liability cases against Cooper.

¶ 7 Before airing the story, KNXV contacted Brown to request an interview for inclusion in the broadcast. KNXV informed her that it possessed documents regarding problems with Cooper's tires dating back to 1996 and documents that Cooper had refused to pursue safety measures suggested by its own employees due to cost concerns. Cooper declined to participate in the interview. Cooper did not inform KNXV that the Documents Boudreau described were confidential or might be subject to any confidentiality order.

¶ 8 KNXV aired the story ("the Broadcast") on November 3, 2005. KNXV made the Broadcast available on its website until November 9, 2005. A few days after the Broadcast, Cooper's counsel told KNXV's counsel that the documents shown in the Broadcast were confidential and subject to the trial court's confidentiality order. Coo-

---

1. The parties reached a confidential settlement on September 29, 2005. The case was dismissed with prejudice in December 2005.

2. A Bates number is a number affixed to a document for the purpose of identifying and distinguishing it from other documents in a series. Black's Law Dictionary 161 (8th ed.2004).

per asked KNXV to (1) reveal its confidential source for the Documents, (2) return all copies of the Documents to Cooper, (3) agree not to disseminate the Documents and their contents further, including a prohibition on further disseminating the Broadcast, and (4) admit that KNXV had violated the trial court's confidentiality order.

¶ 9 KNXV declined to reveal its source, but did remove the Broadcast from its internet website.

¶ 10 On November 10, 2005, Cooper's counsel showed KNXV's counsel documents appearing to be the same as the Documents shown in the Broadcast, but with Bates numbers and notations that the documents were "Confidential." Cooper's counsel explained that the December 1996 memorandum had been marked and admitted into evidence, and the March 13, 2000 memorandum had been marked but was never offered or admitted into evidence.

¶ 11 Five days later, KNXV sought to intervene in the case. It sought a judicial declaration that it had complied with the confidentiality order and could continue to disseminate the Broadcast and the Documents. Cooper filed a "Cross–Motion For Affirmative Relief As To Intervenors" requesting, among other things, an order requiring KNXV to disclose the identity of its confidential source.

¶ 12 After a hearing in March 2006, the trial court permitted KNXV to intervene, but denied Cooper's request to compel Boudreau to reveal her confidential source. The court, however, granted Cooper's request to preclude further broadcasts of the Documents.

¶ 13 KNXV challenged the ruling by filing a petition for special action. We accepted jurisdiction and granted partial relief in a decision order. Specifically, we concluded that the constitutionality of the trial court's order depended upon whether the Documents came from a source outside the litigation. Accordingly, we directed the trial court to conduct "an *in camera* review of the underlying facts as to how the subject documents were obtained" and ordered KNXV to "provide further factual information sufficient to allow the trial court to make an informed determination as to whether the source of the three documents in question was independent of this litigation." Our mandate issued on August 15, 2006.

¶ 14 KNXV sought an *in camera* hearing. Cooper filed two responses and also requested the trial court to find that the reporter-informant privilege was waived. In reply, KNXV argued that *in camera* review meant review in chambers with no counsel present. Cooper contended that KNXV was changing what we had ordered because an *in camera* hearing did not equate to an *ex parte* hearing.

¶ 15 At oral argument, KNXV asked the trial court to review the Boudreau declaration *in camera*, along with forty-one sworn statements from trial participants who denied providing the Documents to KNXV.

¶ 16 After rejecting Cooper's waiver argument, the trial court adopted a two-step proceeding for its *in camera* review. First, the court would review, *in camera*, a declaration by Boudreau. The court invited Cooper to submit "a checklist of things [the court] should be looking for in th[e] declaration." If additional information were necessary, the trial court would then take the second step and conduct an *in camera* evidentiary hearing. Cooper declined to submit any checklist.

¶ 17 After reviewing the Boudreau declaration, the trial court found "that the source [for] the [D]ocuments was independent from and outside this litigation." The court then vacated its prior order restraining further dissemination of the Broadcast and the Documents.

¶ 18 Cooper unsuccessfully sought special action relief from this court. The Arizona Supreme Court, after receiving a special action petition and stay request, denied Cooper's request for stay but allowed it to seek relief from the United States Supreme Court. The Arizona Supreme Court treated Cooper's request for consideration by the full court as a petition for review and denied it. Cooper's Application to the United States Supreme Court for a Stay or Injunction Pending Disposition of Petition for Writ of

Certiorari was denied, as was its petition for certiorari.

¶ 19 Cooper filed this appeal. Specifically, it challenges the court's order declining to find a waiver of the reporter-informant privilege and permitting the filing of the Boudreau declaration under seal for the trial court's eyes only. In addition, Cooper challenges the August 22, 2006 signed minute entry that found that the Documents' source was outside the litigation and that vacated the order preventing KNXV and Boudreau from further broadcasting or discussing the contents of the Documents.

## DISCUSSION

¶ 20 We review whether an evidentiary privilege applies de novo because it is a legal question. *See Twin City Fire Ins. Co. v. Burke,* 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003). Whether a privilege has been waived poses a mixed question of law and fact, which we also review de novo, *see id.,* unless that question hinges on resolution of conflicting facts or witness credibility issues, in which case we review for an abuse of discretion. *See State v. Steelman,* 120 Ariz. 301, 317, 585 P.2d 1213, 1229 (1978). To the extent that the arguments require us to interpret statutes, we apply de novo review to those issues. *State v. Wilson,* 200 Ariz. 390, 393, ¶ 4, 26 P.3d 1161, 1164 (App.2001).

### I

¶ 21 KNXV contends that Cooper's appeal is barred by (1) its failure to appeal our decision order remanding this case for *in camera* review; (2) law of the case; and (3) the mootness doctrine. We disagree.

¶ 22 According to KNXV, the order for *in camera* review presumes that a waiver of the privilege has not occurred. KNXV concedes, however, that this "Court noted that the issue of waiver was not before it." This issue was not addressed until the trial court denied Cooper's motion for finding of waiver. Accordingly, because Cooper appealed the court's order, the waiver issue is not foreclosed by the appeal deadlines in Arizona Rule of Civil Appellate Procedure 23(a).

¶ 23 Likewise, the law of the case doctrine does not bar our review of the waiver issue. The doctrine provides that "if an appellate court has ruled upon a legal question and remanded for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Paul R. Peterson Constr., Inc. v. Ariz. State Carpenters Health & Welfare Trust Fund,* 179 Ariz. 474, 478, 880 P.2d 694, 698 (App.1994) (quoting *Employers Mut. Liab. Ins. Co. v. Indus. Comm'n,* 115 Ariz. 439, 441, 565 P.2d 1300, 1302 (App.1977)). Because Cooper did not raise the waiver issue in its special action petition and we expressly declined to address waiver, there has been no prior appellate decision on waiver, and law of the case is inapplicable. *See id.*

¶ 24 Finally, the waiver issue is not moot. The mootness doctrine directs that "opinions not be given concerning issues which are no longer in existence because of changes in the factual circumstances." *Chambers v. United Farm Workers Org. Comm.,* 25 Ariz.App. 104, 106, 541 P.2d 567, 569 (1975). Boudreau has not revealed her source's identity and is not willing to do so. Therefore, whether KNXV has waived the privilege through its conduct remains a justiciable issue.

### II

¶ 25 The trial court concluded that KNXV did not waive the reporter-informant privilege. The court found that KNXV did not use the privilege as a sword, and that the privilege was only used defensively.

¶ 26 The reporter-informant privilege is codified in Arizona's "press shield law." Ariz.Rev.Stat. ("A.R.S.") § 12–2237 (2003). The statute provides that:

A person engaged in newspaper, radio, television or reportorial work, or connected with or employed by a newspaper, radio or television station, shall not be compelled to testify or disclose in a legal proceeding or trial or any proceeding whatever, or before any jury, inquisitorial body or commission,

or before a committee of the legislature, or elsewhere, the source of information procured or obtained by him for publication in a newspaper or for broadcasting over a radio or television station with which he was associated or by which he is employed. . . .

*Id.* The statutory privilege belongs to the reporter. *See State v. Moody,* 208 Ariz. 424, 458, ¶ 139, 94 P.3d 1119, 1153 (2004) ("In Arizona, a reporter has a privilege to shield a confidential source for an article.").

■ ¶ 27 Cooper contends that KNXV waived the privilege by intervening in this case, applying for affirmative relief in the form of a declaratory judgment, and seeking disclosure of trial documents and exhibits. Cooper also suggests that KNXV's counsel waived the privilege by making selective disclosures about the confidential informant.

¶ 28 Neither party has cited, and we have not identified, any cases involving waiver of the reporter-informant privilege. KNXV maintains, moreover, that based on the statute's mandatory language, the privilege is absolute and cannot be waived. Assuming *arguendo* that the A.R.S. § 12–2237 privilege can be waived, neither KNXV's litigation position nor its limited disclosures support a waiver finding in this case.

¶ 29 Cooper contends that an implied waiver occurred because KNXV sought affirmative relief and withheld privileged information. By analogy, the Arizona Supreme Court found a waiver of the doctor-patient privilege in *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 382 P.2d 560 (1963). There, the defendant, a personal representative of the deceased driver, claimed that the driver suffered a sudden heart attack. *Id.* at 156, 382 P.2d at 566. The plaintiff sought to introduce evidence that the defendant's doctor had told the driver to refrain from driving due to his heart condition. *Id.* When the defendant attempted to block the testimony by claiming the privilege, the court concluded

that the defendant could not block inquiry into the issue he had raised. *Id.* at 157–58, 382 P.2d at 567–68. In short, waiver occurs "when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield." *Id.* at 158, 382 P.2d at 568 (quoting 8 *Wigmore on Evidence* § 2388, at 855 (J. McNaughton rev. ed.1961)).

¶ 30 This case is different. KNXV did not seek the affirmative relief of damages or an injunction. Rather, when faced with the possibility of an order to show cause hearing, KNXV sought a declaratory judgment that it had complied with the confidentiality order and could continue to use, rebroadcast, or disseminate the Broadcast and the Documents. KNXV also pursued relief through special action.[3] KNXV's defensive posture was underscored when the trial court implemented our decision order requiring proof that KNXV received the Documents from a source outside the litigation. On remand from this court, KNXV disclosed further information *in camera* in an effort to rebut and defend against the presumption that it had violated the confidentiality order, and not to obtain affirmative relief.

¶ 31 The only arguably affirmative relief requested by KNXV was its request to unseal trial transcripts, documents, and exhibits because Cooper had waived their trade secret status. The request to unseal those items has no bearing on the confidentiality of the station's source. *See Waterloo/Cedar Falls Courier v. Hawkeye Cmty. Coll.,* 646 N.W.2d 97, 101–02 (Iowa 2002) (finding that a college was not entitled to discover the newspaper's confidential sources based upon the newspaper's suit to enforce the Open Meetings Law). Accordingly, KNXV did not impliedly waive its statutory privilege by seeking declaratory relief.

¶ 32 Cooper further asserts that KNXV and its counsel waived the reporter-infor-

---

3. Cooper also insists that KNXV and Boudreau waived the privilege by (1) inserting themselves into an inquiry as to whether attorneys representing the original *Flores* parties had breached the confidentiality agreements, and (2) arguing that Cooper had abandoned its trade secret pro-

tections. We decline to address these issues because Cooper did not raise them in its motion on waiver. *See Trantor v. Fredrikson,* 179 Ariz. 299, 300–01, 878 P.2d 657, 658–59 (1994) (declining to consider issues not presented to the trial court).

mant privilege by making disclosures about the source without specifically identifying the person. According to Cooper, this implied waiver occurred when KNXV's counsel stated during a hearing that Boudreau obtained the Documents from a whistle-blower weeks after *Flores* had settled. We disagree.

¶ 33 Unlike the other evidentiary privileges, which are premised upon a prior, although tacit, agreement of confidentiality, the reporter-source privilege is rooted in the "public purpose to allow journalists to collect the news from sources who would not otherwise disclose information if they were identified." *Ulrich v. Coast Dental Servs., Inc.,* 739 So.2d 142, 143–44 (Fla.Dist.Ct.App.1999) (distinguishing between the journalist's privilege and other privileges that are based on confidential communications, such as the husband-wife, attorney-client, and patient-physician privileges). *See generally* Anthony L. Fargo, *The Year of Leaking Dangerously: Shadowy Sources, Jailed Journalists, and the Uncertain Future of the Federal Journalist's Privilege,* 14 Wm. & Mary Bill Rts. J. 1063, 1072 (2006) (explaining that while other privileges protect the right to safeguard a client's or patient's private statements from disclosure, a journalist's privilege protects the right to publish or broadcast information while keeping the source's identity secret; the primary aim "is to protect the journalist's First Amendment right to publish the news without government interference"). Accordingly, allowing disclosure of partial information to waive the privilege as to all information gathered on the same subject matter "would chill the free flow of information to the public." *In re Paul,* 270 Ga. 680, 513 S.E.2d 219, 224 (1999) (citations omitted). A chill would likewise result if we found a waiver based solely upon the statements that KNXV obtained information from a whistle-blower weeks after the trial.

¶ 34 In light of these authorities, we construe the scope of waiver narrowly. The disclosure by KNXV that the source is a whistle-blower does not support a waiver. *See J.J.C. v. Fridell,* 165 F.R.D. 513, 516–17 (D.Minn.1995) (holding that revealing that the defendant was not the source of a story about the plaintiff's claim did not waive the privilege as to the source's identity or to any unpublished information that might reveal it); *cf. In re Venezia,* 191 N.J. 259, 922 A.2d 1263, 1276 (2007) (refusing to hold that a waiver of privilege extended beyond the specific information actually imparted). *See generally* Carl C. Monk, *Evidentiary Privilege for Journalists' Sources: Theory and Statutory Protection,* 51 Mo. L.Rev. 1, 60 (1986) ("[W]hile revelation of confidential information may appropriately be said to constitute a waiver of some privileges, it should not be treated as a waiver of the reporter's privilege.").

¶ 35 Furthermore, describing the Documents' appearance does not constitute a waiver as to the confidentiality of their source. Otherwise, a waiver could arguably occur when a party created a privilege log describing the material withheld. Equally unavailing is the assertion that identifying someone as a whistle-blower waives the privilege; "whistle-blower" can be a synonym for a source.

### III.

¶ 36 Cooper argues that the trial court violated its due process rights by conducting the *in camera* review outside the presence of counsel. In addition to contesting that argument, KNXV also asserts that Cooper's argument is moot, untimely, and barred by the law of the case doctrine.

¶ 37 KNXV contends that Cooper's claim is moot because the documents that Cooper seeks to keep secret have already been disseminated through KNXV's Broadcast and website. Because this case falls into an exception to the mootness doctrine, we address the due process argument.

¶ 38 The decision to dismiss a case based on mootness is largely discretionary. *Bilagody v. Thorneycroft,* 125 Ariz. 88, 90, 607 P.2d 965, 967 (App.1979). Arizona courts have shown a willingness to hear moot due process challenges when the issues raised are of public importance. *See Salas v. Ariz. Dep't of Econ. Sec.,* 182 Ariz. 141, 143 n. 2, 893 P.2d 1304, 1306 n. 2 (App.1995) (examining a possibly moot issue because it was "of statewide importance and ... might other-

wise elude review"); *State v. Helffrich*, 174 Ariz. 1, 5, 846 P.2d 151, 155 (App.1992) ("Regardless of whether the issue is moot, we will consider the merits because the issue is of significant public importance and is likely to recur.").

¶ 39 That public importance exception to the mootness doctrine applies here as well. Accordingly, this holding obviates the need to consider whether this case also satisfies the "capable of repetition yet evading review" exception. *See, e.g., Thomas v. City of Phoenix*, 171 Ariz. 69, 74, 828 P.2d 1210, 1215 (App.1991) (recognizing that a court may decide a moot question if it is capable of repetition yet evading review).

¶ 40 The fact that Cooper failed to appeal the decision order requiring *in camera* review does not make this appeal untimely. Our order did not expressly state that the review would be *ex parte*. An *in camera* review connotes non-public review; it does not necessarily preclude the presence of counsel. *See Downs v. Scheffler*, 206 Ariz. 496, 503, ¶ 30, 80 P.3d 775, 782 (App.2003) (directing an *"in camera* inquiry in the presence of counsel"); *SCI–Sacramento, Inc. v. Superior Court*, 54 Cal.App.4th 654, 62 Cal. Rptr.2d 868, 871–72 (1997) (holding that the station did not waive the shield law privilege by submitting the tape to the court for *in camera* review in a criminal case, even though the defendant and the defendant's counsel were present). The subsequent implementation of our decision order in a manner excluding counsel gave rise to the due process claim at issue here. It therefore is not barred.

¶ 41 Because the decision order's implementation was not previously raised, the law of the case doctrine does not bar Cooper's due process claim. We declined jurisdiction of the special action taken from the trial court's ruling, and the Arizona Supreme Court limited its denial of review to the decision order, which established the *in camera* review process and declined to address waiver. Law of the case does not apply. *See Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 297 n. 5, 697 P.2d 684, 690 n. 5 (1985) ("[d]enial of a petition for review has no prece-

dential value" and does not indicate the Supreme Court's agreement with the Court of Appeals' reasoning or conclusion); *Barclay v. Jones*, 127 Ariz. 282, 284, 619 P.2d 1059, 1061 (App.1980) (declining to exercise special action jurisdiction is not a decision on the merits and "do[es] not constitute the law of the case").

¶ 42 Because there is no procedural bar to Cooper's due process argument, we proceed to the merits. The due process issue Cooper raises is procedural due process notice and an opportunity to be heard. *See, e.g., Johns v. Ariz. Dep't. of Econ. Sec.*, 169 Ariz. 75, 79, 817 P.2d 20, 24 (App.1991) ("The touchstone of due process involves notice and an opportunity to be heard . . . ."). Specifically, it objects to the judge's review of Boudreau's affidavit without an opportunity to see or challenge it.

¶ 43 "The right to confront witnesses is not absolute and may, in appropriate cases, give way to other legitimate interests in the criminal process." *State v. Quinn*, 121 Ariz. 582, 585, 592 P.2d 778, 781 (App.1978) (upholding the trial court's *in camera* questioning of a rape victim with the aid of information submitted by the defendant). In civil cases like this one, the United States Supreme Court has consistently recognized that procedural due process protections must vary depending on the situation, requiring courts to balance the nature of the private and governmental interests involved, the burdens of alternative processes, and the risk of an erroneous deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

¶ 44 Here, the interest in protecting the informant's confidentiality is substantial. The statutory privilege protects reporters and those employed by a television station, stating that they "shall not be compelled to testify or disclose in a legal proceeding or trial or any proceeding whatever . . . the source of information procured or obtained." A.R.S. § 12–2237. The statute applies to all proceedings "whatever" and thus precludes disclosure of the confidential source to Coo-

per and its counsel. *See id.* The statute fosters the news media's "function as a vital source of information." *See Zerilli v. Smith,* 656 F.2d 705, 711 (D.C.Cir.1981). It also furthers the public policy of enabling news organizations to meet their ethical and legal obligations. *See generally Cohen v. Cowles Media Co.,* 501 U.S. 663, 670, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991) (holding that sources may sue news organizations for breaches of the promise of confidentiality). Arrayed against these interests were Cooper's interests in reviewing Boudreau's sealed affidavit, possibly questioning her about it and related matters and preventing further dissemination of trade secrets.

¶ 45 In a case involving similar competing interests, the Fifth Circuit struck a balance by approving a two-stage *in camera* examination of a reporter possessing confidential information. *In re Selcraig,* 705 F.2d 789 (5th Cir.1983). The district court had to determine whether the reporter's confidential sources were independent of the defendant school district that had been sued for allegedly publicizing defamatory statements. *Id.* at 795. To protect the reporter's privilege "as far as possible," the court proposed to ask the reporter *in camera* whether his confidential sources were in positions which permitted the statements to be attributed to the school district. *Id.* If the reporter stated that his sources were connected with the district, the district court would pose follow-up questions; if not, the inquiry would end. *Id.* "Only if the inquiry reached the second stage would the court reveal anything to counsel." *Id.* The Fifth Circuit upheld the structured proceeding. *Id.* at 798–99.

¶ 46 Here, the trial court pursued a similar two-step procedure in conducting its *in camera* review of the sealed Boudreau affidavit. Moreover, forty-one people associated with the underlying trial submitted affidavits to the court stating that they had not disclosed confidential information to KNXV.[4] Having satisfied itself that the source of KNXV's information was outside the litigation, the trial court found no need to examine Boudreau directly in an evidentiary proceeding.

¶ 47 Similar procedures have been upheld in the criminal context, where the interest supporting disclosure of the information—the defendant's liberty interest—is fundamental. In *State ex rel. Green Bay Newspaper Co. v. Circuit Court,* a criminal defendant sought to force disclosure of two reporters' sources to obtain potentially exculpatory evidence. 113 Wis.2d 411, 335 N.W.2d 367, 371 (1983). The reporters refused to identify their sources. *Id.* In order to protect "the societal interest ... [in] the free flow of information" that is represented by the reporter-informant privilege, the court found that if the defendant could establish that the reporters' sources could lead to exculpatory evidence, the trial judge would then conduct an *ex parte, in camera* hearing to verify whether the evidence is necessary to the defense. *Id.* at 373–74. If the trial judge found the evidence necessary to the defense, only then would the source be disclosed to the defendant. *Id.* at 374.

¶ 48 Cooper complains that the trial court failed to give due weight to its trade secrets in the *Mathews* balancing. We disagree and find *O'Grady v. Superior Court,* a recent California case, instructive. 139 Cal.App.4th 1423, 44 Cal.Rptr.3d 72 (2006). In *O'Grady,* a computer manufacturer sued website publishers for publishing allegedly confidential company information and sought to discover the identity of the publisher's source. *Id.* In discussing the relative interests, the court stated: "In the abstract, at least, it seems plain that where both cannot be accommodated, it is the statutory quasi-property right that must give way, not the deeply rooted constitutional right to share and acquire information." *Id.* at 113. Moreover, the appellate court found that when the alleged trade secret is of great public interest, the balance also tips against private property interests. *See id.*

¶ 49 Here, we find that the trial court's order gave proper weight to both the private and public interests. The court considered the statutory privilege, the information in the Boudreau affidavit that it found to demonstrate that the source came from outside the litigation, its confidentiality order, and the

4. Cooper received copies of the forty-one other affidavits.

information being released and its public importance. Consequently, we find that the court's two-step analysis comported with the requirements of due process.[5]

¶ 50 Cooper relies on *American–Arab Anti–Discrimination Comm. v. Reno* to support its claim that the court's *Mathews* balancing should not have resulted in an *ex parte* procedure. 70 F.3d 1045 (9th Cir.1995) ("*AADC*"), *vacated on jurisdictional grounds*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). *AADC* is readily distinguishable. In the immigration context, the Ninth Circuit found a serious deprivation of liberty was at issue and prohibited the federal government from acting on evidence that it had refused to disclose to foreign nationals facing deportation. *Id.* at 1069–70. The court found that the government had failed to demonstrate a strong interest in keeping the information confidential, and had offered no evidence that the individual aliens had threatened this country's national security. *Id.* The court therefore prohibited the government from using "secret information as a sword against the aliens." *Id.* at 1070.

¶ 51 This case, by contrast, does not involve such liberty interests. KNXV has demonstrated an interest in protecting the confidential source's identity, and its posture was defensive.

¶ 52 Cooper also argues that the trial court's balancing of rights and use of the *in camera* procedure resulted in an *ex parte* adjudication of Cooper's "ultimate" rights. It contends that KNXV and Boudreau's authorities only support the use of an *ex parte* procedure to dispose of non-ultimate questions.

¶ 53 We disagree. First, we note that the purpose of the hearing was to determine whether Boudreau violated the confidentiality agreement, not to adjudicate Cooper's ultimate rights. Moreover, in *Selcraig,* the plaintiff needed to establish that a public school district was the source of an allegedly defamatory article in order to establish his civil rights claim. 705 F.2d at 797. The trial court adopted an *ex parte, in camera* proce-

dure to question the reporter about the source for his article. *Id.* at 795. On appeal, the *Selcraig* court upheld the *ex parte, in camera* procedure that would be dispositive of the plaintiff's ultimate right to recover. *Id.* at 798–99.

¶ 54 Finally, Cooper asserts that *in camera* review should entail an attorney's-eyes only exception. The shield law's plain language extending the privilege to "any" proceeding or inquiry whatsoever, including civil, criminal, and grand jury proceedings, bars such a result. *See* A.R.S. § 12–2237. If confidential source information cannot be disclosed in grand jury proceedings, then it surely cannot be shared with opposing counsel in a civil suit under an attorney's-eyes only order. *See* A.R.S. § 13–2812(A) (2001) (disclosing any "matter attending a grand jury" is a crime).

¶ 55 Creating the requested exception would seriously damage the public policies underpinning the shield law "because of the inevitable uncertainty to which the exception would lead. Parties could not be certain that their conversations and tips would be confidential and protected, and the stream of information flowing to reporters and then to the public might be severely diminished." *Coughlin v. Westinghouse Broadcasting & Cable, Inc.,* 780 F.2d 340, 352 (3d Cir.1985) (Becker, J., concurring); *see also Cohen,* 501 U.S. at 670, 111 S.Ct. 2513 (recognizing the right of sources to sue news entities for the breach of confidentiality promises). We decline to do so.

¶ 56 Alternatively, Cooper contends that our decision order supports a finding of privilege waiver and undercuts any claim to *ex parte, in camera* review. We disagree.

¶ 57 We directed the trial court to conduct a review "of the underlying facts as to how the subject documents were obtained" *in camera* in order to "protect[ ] the confidentiality of the alleged independent source." More importantly, we stated that a waiver of the privilege was "not at issue in this special action." As Cooper points out, our decision

---

5. The trial court's procedure is not the only one that would have comported with the requirements of due process. For example, the trial

court could have allowed Cooper to review a redacted copy of the Boudreau affidavit.

order also states that A.R.S. § 12–2237 should not be used as a sword and a shield. The context of the statement makes clear that KNXV could not rest upon Boudreau's previous declarations on remand, but rather had to provide "further factual information" to the trial court to overcome the presumption that KNXV and Boudreau had violated the confidentiality order.

¶ 58 Our decision order also contains a footnote stating: "The trial court denied Cooper Tire's request that petitioners be ordered to reveal the identity of the alleged confidential source. That denial is not at issue in this special action. *But see Slade v. Schneider*, 212 Ariz. 176, 129 P.3d 465 (App. 2006)." Reading the order as a whole, we conclude that it fails to support a finding of waiver, and allows KNXV to substantiate the privilege by providing further evidence.

¶ 59 KNXV has requested attorney's fees pursuant to A.R.S. §§ 12–349(A) (2003) and 12–341.01(C) (2003). We do not find that Cooper's claim was made in bad faith or was unjustified. Accordingly, we deny the request for fees. We do, however, award KNXV its appellate costs.

## CONCLUSION

¶ 60 We affirm the trial court's rulings in all respects, and deny KNXV and Boudreau's request for attorneys' fees.

CONCURRING: PHILIP HALL,
Presiding Judge.

SNOW, Judge, dissenting:

¶ 61 In my view, the issue presented by this appeal is whether the trial court violated Cooper's right to due process when it accepted and considered the affidavit of Boudreau, filed *ex parte* and under seal, without revealing or describing any part of the affidavit's contents to Cooper. Because I believe under the circumstances that it did, I dissent.

¶ 62 In our previous decision order we determined that when KNXV voluntarily agreed to be subject to the confidentiality order in this matter, and nevertheless published documents that were subject to it, KNXV had the burden of establishing that its source for the documents was outside this litigation before further disseminating them. *Scripps Howard Broad. Co. v. Schneider*, 1 CA–SA 06–0081 (Ariz.App. June 13, 2006) (mem. decision); *see also Snepp v. United States*, 444 U.S. 507, 510 n. 3, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (observing that a confidentiality agreement entered voluntarily is generally not considered "unenforceable as a prior restraint on protected speech"); *Charter Commc'ns, Inc. v. County of Santa Cruz*, 304 F.3d 927, 935 n. 9 (9th Cir.2002).

¶ 63 We further noted that both Cooper and the trial court had an interest in the enforcement of the confidentiality order.

Cooper has a legitimate interest in maintaining the confidentiality of trade secrets and the enforcement of a voluntarily-entered confidentiality agreement. In addition, the trial court has a legitimate interest in maintaining and enforcing its previously entered orders, including the instant one by which [KNXV–TV] voluntarily agreed to be bound.

*Scripps Howard*, 1 CA–SA 06–0081, slip op. at 7.

¶ 64 We recognized that A.R.S. § 12–2237 protected KNXV from revealing the source of its information. But, we noted that under the circumstances, § 12–2237 "can be accommodated by the trial court conducting an *in camera* review of the underlying facts as to how the subject documents were obtained." *Id.* at 6.

¶ 65 On remand, over Cooper's objection, the trial court agreed to employ a two-step procedure proposed by KNXV. In the first step of that procedure the trial court agreed to accept an additional *ex parte* sealed declaration by Boudreau. KNXV apparently advised both Cooper and the trial court that this supplemental affidavit did not name Boudreau's source for the documents but did further detail the facts behind Boudreau's receipt of the documents. The trial court did not propose to independently question Boudreau concerning her assertions in the affidavit. Nor did the court propose to redact only those specific portions of the affidavit that might serve to identify the source of the documents, or otherwise provide Cooper with any of the non-identifying facts that the dec-

laration contains about how KNXV obtained the documents from a source outside this litigation. Nevertheless, the trial court invited Cooper to submit whatever information or checklists it thought the court could use in evaluating the supplemental Boudreau affidavit. After considering this information the trial court indicated it would determine if the second step, holding an evidentiary hearing, would be appropriate.

¶ 66 Cooper objected to submitting information to impeach the declaration without even having a general idea as to what it contained. It thus submitted no additional materials. Two days later, after reviewing the Boudreau affidavit, the court determined no evidentiary hearing was necessary and vacated its earlier order preventing KNXV from further dissemination of the documents at issue.

¶ 67 I part company with the majority because I think it not only sanctions a deprivation of due process but it fails to give full effect to our prior decision order. A careful reading of that order demonstrates that this court already took into account the requirements of A.R.S. § 12–2237 and mandated the required procedure. While A.R.S. § 12–2237 protects KNXV from identifying its source, it does not, in these circumstances, protect KNXV from otherwise describing with some particularity how it came to obtain the documents at issue. We narrowly construe statutory privileges because they are in "derogation of the search for the truth" and the public generally "has a right to every man's evidence." *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 136, ¶ 14, 75 P.3d 1088, 1095 (App.2003) (quoting *United States v. Nixon*, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

¶ 68 While due to the statutory privilege Cooper may not have the right to ascertain the exact identity of the source which provided KNXV with the documents, it does have the right under these circumstances to challenge KNXV's assertion that the source of the documents was not this litigation. And, to the extent possible without ascertaining the identity of the source, Cooper may challenge the particulars of how KNXV asserts that took place. Thus, in our previous deci-

sion order we did not mandate that Boudreau reveal the source of her information, but we did mandate at a minimum that she disclose "underlying facts as to how the subject documents were obtained." *Scripps Howard*, 1 CA–SA 06–0081, slip op. at 6.

¶ 69 While the trial court considered the declaration, it provided Cooper with no access to any of its contents. In such circumstances the trial court's invitation to Cooper to submit any "checklists" or other information by which the veracity of the declaration might be evaluated was essentially meaningless. "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

¶ 70 Further, in our prior decision order, we noted that KNXV could not meet its burden of proof by "[s]imply relying on an unsubstantiated representation in an otherwise cryptic affidavit." *Scripps Howard*, 1 CA–SA 06–0081, slip op. at 7. Although, KNXV has provided additional detail in its supplemental affidavit filed under seal, by depriving Cooper of any access to it, the trial court permitted the affidavit to remain essentially unverified by the party which has the principal interest in assuring KNXV's compliance with the confidentiality order.

¶ 71 The majority relies on *Selcraig*, 705 F.2d 789, to support the trial court's two-step procedure in this case. However, both the facts and the procedure proposed in *Selcraig* were significantly different. In *Selcraig*, neither the reporter at issue nor the publication for which he worked had ever published documents that were the subject of a confidentiality order to which the reporter was subject. *Id.* at 792. Thus the reporter, Selcraig, was not a party to the proceeding. Rather, he had published newspaper stories concerning the plaintiff—a discharged school district official—and the allegations that led to his discharge. *Id.* The plaintiff brought a civil rights action against the school district because the district had never held hearings by which the plaintiff might clear himself of the allegations that led to his discharge. The school district had

further leaked the allegations to Selcraig. *Id.* at 792–93. In his civil rights action the plaintiff sought to discover Selcraig's sources in an attempt to discern whether they were officials whose conduct could be attributed to the school district. *Id.* at 794.

¶ 72 To protect the confidentiality of Selcraig's sources insofar as possible, the trial court proposed a procedure in which the court would ask Selcraig questions in an *in camera* proceeding directed to determining whether his sources were affiliated with the plaintiff's school district. *Id.* at 795. If they were, then the "second phase" of the *in camera* proceeding would occur in which the court would ask Selcraig to further, and more explicitly, identify his sources. *Id.* The court would decide how much of this information needed to be disclosed to the parties so that they could pursue their respective rights and such disclosures would be under a protective order. *Id.*

¶ 73 This procedure, however, was never implemented because Selcraig refused to take the stand and was held in contempt by the district court. *Id.* On appeal, the circuit court vacated the contempt because it found that the plaintiff already knew that the reporter's source was from the school district, thus plaintiff had no need to establish the actual identity of the source to pursue his action. *Id.* at 792.

¶ 74 As has been stated, Selcraig was not a party to the underlying litigation in that case, nor had he agreed to be bound by a confidentiality order of the court. *Id.* Thus, apparently neither party was intended to be present at the trial court's interrogation of Selcraig. While such a proceeding would have been *in camera* it would not have been *ex parte*, because both parties would have had the same access to the reporter's testimony.[6]

¶ 75 Here, however, Boudreau was allowed, with the assistance of counsel, to prepare an affidavit to be filed under seal which carefully controlled the information that was disclosed and to whom it was disclosed. Further, the trial court did not independently question Boudreau or others, as the trial court proposed to do in *Selcraig*, to determine whether KNXV obtained the documents independent of this litigation. Thus, KNXV uniquely controlled the content of the affidavit, which was not otherwise questioned by the trial court and could not be effectively questioned by Cooper. This complete exclusion of Cooper, coupled with no independent inquiry by the trial court, implicates due process and fairness concerns that were not present in *Selcraig*.

¶ 76 Our system does not permit a court to accept and evaluate evidence offered by one party without allowing the other to test and challenge it. "[W]here important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Obersteiner v. Indus. Comm'n*, 161 Ariz. 547, 549, 779 P.2d 1286, 1288 (App.1989) (holding that "right to cross-examination is fundamental and attaches" when documentary evidence is received); *Joint Anti–Fascist Refugee Comm.*, 341 U.S. at 170, 71 S.Ct. 624 (Frankfurter, J., concurring) ("[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights."). Finally, "[w]ithout any opportunity for confrontation, there is no adversarial check on the quality of information" that KNXV provided and upon which the trial court relied to determine Boudreau's source came from outside of the *Flores* litigation. *AADC*, 70 F.3d at 1069.

¶ 77 Because, in my view, considering this one-sided evidence deprived Cooper of the process it was due, I respectfully dissent.

---

**6.** I agree with the majority that an *in camera* review is not necessarily the same thing as an *ex parte* review. As the majority correctly notes, *in camera* and *ex parte* are wholly different terms. *In camera* means in chambers or in private. Black's Law Dictionary 775 (8th ed.2004). *Ex* *parte* means one side only or by or for one party. *Id.* at 616. Our order to conduct an *in camera* review did not require, or authorize, the unique exclusion of Cooper, especially in the absence of independent questioning of Boudreau by the trial court.