[No. C024452. Third Dist. Apr. 24, 1997.]

SCI-SACRAMENTO, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

656

**Counsel**

Diepenbrock, Wulff, Plant & Hannegan, Charity Kenyon and Holly B. Armstrong for Petitioners.

Crosby, Heafey, Roach & May, John E. Carne, David E. Durant, Johanson & Robinson and Stephen H. Johanson as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray, Roger E. Venturi and Susan J. Orton, Deputy Attorneys General, for Real Party in Interest.

Gil Garcetti, District Attorney (Los Angeles), George M. Palmer and Brent Riggs, Deputy District Attorneys, as Amici Curiae on behalf of Real Party in Interest.

**Opinion**

**SIMS, J.**—Petitioners SCI-Sacramento, Inc., a Maryland Corporation doing business as KOVR-TV, and Jim Saunders (KOVR's news director and custodian of records), hereafter collectively "KOVR," petition this court for a writ of mandate or prohibition to avoid disclosure of materials subpoenaed by the prosecution in a pending criminal case. The materials are "outtakes" of a videotaped interview KOVR conducted with the defendant in the

criminal case. KOVR submitted the videotape to the trial court for purposes of an in camera review in the course of the trial court's ruling on KOVR's motion to quash the prosecution's subpoena. The trial court ordered disclosure. KOVR contends the threatened disclosure is prohibited by the newspersons' shield law. (Cal. Const., art. I, § 2, subd. (b)[1] (hereafter article I, section 2(b)); Evid. Code, § 1070.[2]) The People argue among other things that the shield law merely provides an immunity against contempt, not a privilege against disclosure, and there is no contempt order in this case. We shall agree that our review of the merits of the dispute is premature.

We previously issued an alternative writ and a stay of the trial court's order pending our plenary review. We shall now dissolve the stay and issue a peremptory writ directing the trial court to vacate its order and issue a new order giving the newspersons the opportunity to choose to suffer a judgment of contempt.

### FACTUAL AND PROCEDURAL BACKGROUND

KOVR is a television station engaged in the gathering, receiving and processing of information for communication to the public. After learning that one Anthony Lee DeSoto had confessed to sheriff's investigators that he

---

[1]California Constitution, article I, section 2, subdivision (b), provides in part: "A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical . . . *shall not be adjudged in contempt* by a judicial, legislative, or administrative body, or any other body having the power to issue subpoenas, for refusing to disclose the source of any information procured while so connected or employed for publication . . . or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

"Nor shall a radio or television news reporter or other person connected with or employed by a radio or television station, or any person who has been so connected or employed, *be so adjudged in contempt* for refusing to disclose the source of any information procured while so connected or employed for news or news commentary purposes on radio or television, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

"As used in this subdivision, 'unpublished information' includes information not disseminated to the public by the person from whom disclosure is sought, whether or not related information has been disseminated and includes, but is not limited to, all notes, *outtakes*, photographs, tapes or other data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such material has been disseminated." (Italics added.)

[2]Evidence Code section 1070 uses almost the same language as the constitutional provision. Evidence Code section 1070, subdivision (b), provides: "Nor can a radio or television news reporter or other person connected with or employed by a radio or television station, or any person who has been so connected or employed, be so adjudged in contempt for refusing to disclose the source of any information procured while so connected or employed for news or news commentary purposes on radio or television, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public."

had killed his cellmate, KOVR news reporter Tom Layson conducted a videotaped interview with DeSoto in the San Joaquin County jail.

Portions of the interview were broadcast on KOVR news programs on March 19 and March 20, 1996.

In April 1996, the People issued a subpoena duces tecum for KOVR's custodian of records to "BRING TAPE RECORDING OF THE ENTIRE INTERVIEW AT THE SAN JOAQUIN COUNTY JAIL OF DEFENDANT ANTHONY LEE DESOTO ON 3/19 or 3/20/96, TO INCLUDE PORTIONS OF BROADCAST AS WELL AS PORTIONS THAT WERE NOT BROADCASTED [sic]." The subpoena indicated no appearance was required if the materials were turned over to the prosecution.

KOVR submitted only the broadcast portions of the interview, invoking the newspersons' shield law (Cal. Const., art. I, § 2; Evid. Code, § 1070) as to the "outtakes" which were not broadcast. The prosecutor reiterated her demand for the unpublished materials.

In June 1996, KOVR moved to quash the subpoena on the grounds of the newspersons' shield law. KOVR's motion requested that the subpoena be quashed but asked in the alternative: "If the court should determine that the District Attorney has established and produced evidence of a colorable interest in this matter, KOVR requests that the court review *in camera* those portions of the videotape claimed to be essential to protecting the interests of the People. Such *in camera* review of the unpublished material, with counsel for the media present, would be essential to perform the balancing of the nature described in *Delaney* [v. *Superior Court* (1990) 50 Cal.3d 785 (268 Cal.Rptr. 753, 789 P.2d 934)]. [¶] If the court should determine that . . . the District Attorney has established a right to production of the portions of the videotape that have not been broadcast, then *in camera* review is requested *without prejudice to the right of KOVR's custodian of records to review the court's ruling and to decide whether or not to disclose the unbroadcast portions of the videotape or to suffer a judgment of contempt.*" (Italics added.)

At the July 8, 1996, hearing on the motion to quash, the trial court stated (in concurrence with the position taken in the People's opposition to the motion to quash) that the case law requires in camera review only when the material sought to be shielded under the newspersons' shield law is confidential or sensitive—elements not present in the instant case, where KOVR has not contended the unpublished tape is confidential or sensitive.[3] The court further stated that notwithstanding this point of law, the court would

---

[3]"Unpublished information" under the shield law includes nonconfidential information. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 811 [268 Cal.Rptr. 753, 789 P.2d 934].)

exercise its discretion and review the tape in camera. The court asked KOVR's counsel if she had the tape (exhibit C) with her. She did, and she turned it over to the court. The court conducted the in camera review in the presence of KOVR's counsel, defendant, and defense counsel. KOVR's counsel stated she had no objection to the presence of the defense "[a]s long as it would not constitute a waiver of the Shield Law . . . ." The trial court agreed.[4]

On July 19, 1996, the trial court issued an order denying KOVR's motion to quash, ordering that the videotape (exhibit C) be unsealed (but staying its order), and directing KOVR to provide a copy of the unedited interview to the prosecution. There are two versions of the court order—a sealed version which has not been provided to the People, and an unsealed version. Both versions of the order stated in part: "The court hereby denies KOVR's Motion to Quash and orders that EXHIBIT C be unsealed, but stays the execution of that order until the next hearing on this matter set for July 23, 1996. KOVR is further ordered to provide a complete copy of the unedited interview in continuous sequence at the July 23, 1996 hearing."[5]

The court later noted a correction extending the stay to July 29, the date of the next hearing.

KOVR wrote to the court requesting that the stay be extended to September due to unavailability of the court reporter to transcribe the July 8th hearing.

The court minutes of the July 29, 1996, hearing reflect: "COUNSEL FOR KOVR INDICATES INTENTION TO FILE PETITION FOR WRIT OF MANDATE CHALLENGING THE COURT'S DECISION AND REQUEST FOR STAY TO 09/03/1996 IS RENEWED IN LIGHT OF THE CONTINUANCE OF THE TRIAL DATE [which was continued to March 17, 1997]." The trial court ordered preparation of the transcript of the July 8, 1996, hearing and granted KOVR a stay to August 19, 1996. The minutes also reflect KOVR's request for a further stay was denied at an in camera hearing, the transcript of which was ordered sealed.

Our record contains no reporter's transcript of the July 29, 1996, proceedings.

On August 14, 1996, KOVR filed in this court a petition for writ of mandate and/or prohibition and application for immediate stay.

---

[4]Without ordering unsealed the reporter's transcript of the in camera proceedings, we note the trial court's response "All right" appears in the sealed portion of the reporter's transcript. The court made this comment before clearing the courtroom for the in camera proceedings.

[5]Trial court exhibit C (the videotape sought by the People) has not been transmitted to this court and is apparently still in the possession of the trial court.

On August 16, 1996, we issued a stay of the trial court's July 19, 1996, order and directed the People in its opposition brief to address "the question whether the superior court erred in ordering the unpublished information to be unsealed rather than permitting [KOVR] to choose whether to comply with the subpoena duces tecum or to risk being held in contempt." We also granted KOVR's request to file under seal two exhibits sealed by the trial court—exhibit B (the "sealed version" of the trial court order including as an attachment a written transcript of the videotaped interview, prepared by the court) and exhibit D (the reporter's transcript of the in camera proceedings).

In October 1996, the People filed its opposition brief, arguing among other things that the shield law does not apply because there is no adjudication of contempt.

On November 21, 1996, we issued a writ of alternative mandate and continued the stay in effect.

On December 31, 1996, the People filed a return to the alternative writ, which among other arguments incorporated by reference arguments contained in its earlier opposition.

On January 8, 1997, KOVR filed a reply to the return.

We granted requests to file amici curiae briefs by Kelly Broadcasting Company, doing business as KCRA-TV et al., California Newspaper Publishers Association (CNPA) et al., and the California District Attorneys Association.

## DISCUSSION

### I. *Newspersons' Shield Law*

In its petition, KOVR raises no First Amendment claim. Thus, the sole issue before us is application of the newspersons' shield law (art. I, § 2(b); Evid. Code, § 1070).

■ The purpose of the shield law is "to protect a newsperson's ability to gather and report the news." (*Delaney* v. *Superior Court, supra,* 50 Cal.3d 785, 806, fn. 20.) The shield law "provides only an immunity from contempt, not a privilege" against disclosure. (*Delaney* v. *Superior Court, supra,* 50 Cal.3d at p. 797, fn. 6; see also, *New York Times Co.* v. *Superior Court* (1990) 51 Cal.3d 453, 458 [273 Cal.Rptr. 98, 796 P.2d 811].)

KOVR asks this court to address a question of first impression—whether *the prosecution* in a criminal proceeding can have a constitutional interest sufficient to require disclosure of information otherwise protected by the shield law. This question was expressly left open in *Delaney v. Superior Court, supra,* 50 Cal.3d 785, wherein the Supreme Court held the shield law's protection may be overcome in a criminal proceeding on a showing that nondisclosure would deprive *the defendant* of his federal constitutional right to a fair trial. (*Id.* at pp. 805, 816, fn. 34.)

However, we need not reach the substantive issues, because we shall conclude there is no shield law question ripe for review, since the shield law merely provides immunity from contempt (not a privilege against disclosure), and there is no order of contempt in this case.

## II. *No Waiver*

■ Before addressing the ripeness issue, we dispose of the People's argument that KOVR's submission of the videotape for in camera review constituted a waiver of the shield law's protection or an election not to risk contempt. According to the People, at the point when the trial court asked for the videotape for in camera review, KOVR was presented with a choice—to refuse to submit the videotape for inspection (thereby risking contempt and perfecting their shield law claim) or to submit the tape on the chance the trial court might conclude disclosure was not proper. The People argue that KOVR, having chosen to submit the tape to the court, and having further agreed to the presence of defendant and defense counsel during the in camera review, have no remedy under the shield law.

■ We recently said, " ' "Waiver requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. [Citation.] There must be actual or constructive knowledge of the existence of the right to which the person is entitled. [Citation.]" (*In re Marriage of Moore* (1980) 113 Cal.App.3d 22, 27.) There must be ". . . an actual intention to relinquish it or conduct so inconsistent with the intent to enforce that right in question as to induce a reasonable belief that it has been relinquished." (*Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30, 41.)' (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1203.) This court has recognized that ' "Courts examine the defense of waiver carefully in order to ensure the protection of a party's rights, especially when these rights are statutorily based." ' (*Independent Union of Pub. Service Employees* v. *County of Sacramento* (1983) 147 Cal.App.3d 482, 488, quoting *Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1011.)" (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1185-1186 [279 Cal.Rptr. 406].)

Here, there was no intentional relinquishment of KOVR's rights under the shield law. Rather, KOVR sufficiently reserved its rights by stating in its motion that in camera review was requested "without prejudice to the right of KOVR's custodian of records to review the court's ruling and to decide whether or not to disclose the unbroadcast portions of the video-tape or to suffer a judgment of contempt." Moreover, KOVR's counsel stated she had no objection to the presence of the defense during in camera review "[a]s long as it would not constitute a waiver of the Shield law . . . ." The trial court said "All right."

Thus, there was no waiver.

Moreover, the better policy is to encourage parties to allow disputed materials to be examined by the trial court in camera, because the court's review may resolve the matter expeditiously and short of a contempt adjudication.

The People cite *Hammarley* v. *Superior Court* (1979) 89 Cal.App.3d 388 [153 Cal.Rptr. 608], where we held the statutory newspersons' shield law (Evid. Code, § 1070, fn. 2, *ante*) must yield to a criminal defendant's demonstrated need for subpoenaed materials to ensure the constitutional right to a fair trial. (*Hammarley* v. *Superior Court, supra*, 89 Cal.App.3d at pp. 398-403.) There, the newspaper reporter refused to comply with a trial court order to turn over the subpoenaed materials for in camera review. (*Id.* at pp. 394-395.) The trial court adjudged the reporter in contempt, and we affirmed. (*Id.* at p. 392.) Contrary to the People's implication, *Hammarley* does not support the proposition that submission to in camera review constitutes a waiver of the shield law.[6]

The People argue the procedure for analogous rulings under claim of privilege (Evid. Code, § 915) further compels the conclusion that KOVR has waived any claim by releasing the videotape for in camera review. We disagree.

Thus, Evidence Code section 915, subdivision (b), provides: "When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require

---

[6]Although in *Hammarley* we referred to the shield law as conferring a "privilege," that designation was later disapproved by the Supreme Court in *Delaney* v. *Superior Court, supra*, 50 Cal.3d at page 797, footnote 6, where the court clarified the shield law merely provides an immunity from contempt, not a privilege.

the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither he nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."

The People cite the Law Revision Comment to this statute for the proposition that the information remains confidential only if the court finds it to be privileged. This is certainly the implication of the statute itself. Nevertheless, the statute requires disclosure for in camera review and dictates the consequences. Here, no such statute applies.

We conclude KOVR did not waive the newspersons' shield law by submitting the videotape to the trial court for in camera review.

III. *Writ Petition Premature*

■ The People in its opposition and again in its return contends the shield law does not apply in this case, because it merely provides immunity from contempt, and there is no contempt order here. We agree that under the procedural posture in which this case reaches us, the shield law question is premature.

In *New York Times Co.* v. *Superior Court, supra*, 51 Cal.3d 453, a civil litigant sought disclosure of unpublished photographs of an accident, taken by a newspaper photographer. The trial court ordered the news-gathering entity (the News-Press) to produce its unpublished photographs for in camera inspection. (*Id.* at p. 458.) On the date ordered for inspection, the News-Press sought relief from the trial court's order by filing a writ petition in the Court of Appeal. The Supreme Court held the petition was premature, stating:

"In practical effect, the News-Press's petition to the Court of Appeal was an attempt to avoid the possibility of being adjudged in contempt by the trial court. The petition was premature.

"Article I, section 2, subdivision (b) of the California Constitution states that newspersons '*shall not be adjudged in contempt* . . . for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.'

. . . The provision's statutory counterpart, Evidence Code section 1070, contains a virtually identical provision. . . . *Delaney, supra,* 50 Cal.3d 785 . . . reviewed this unambiguous language and the equally clear legislative history of the shield law and concluded that '. . . the shield law provides only an immunity from contempt, not a privilege.' . . . Because the shield law provides only an immunity *from contempt,* there is nothing from which to seek relief until a newsperson has been adjudged in contempt." (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at pp. 458-459, original italics, fn. omitted.)

*New York Times Co.* cited with approval *KSDO* v. *Superior Court* (1982) 136 Cal.App.3d 375 [186 Cal.Rptr. 211], which held the shield law did not apply where the newspersons had not been threatened with or cited for contempt. (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 459 [finding qualified privilege under First Amendment].)

The Supreme Court reiterated that allowing relief before a judgment of contempt would violate the unambiguous language of the shield law. (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 459.) The court then said premature relief would "also" have undesirable practical effects, in that it would deprive trial courts of the opportunity to decide in the first instance whether the shield law applied, and would deprive the reviewing courts of adequate factual records. (*Id.* at pp. 459-460.) This reason obviously does not apply in the instant case, where KOVR did produce the material for in camera review (unlike the newspersons in *New York Times Co.*). Nevertheless, this concern was merely an "additional" reason for denying premature relief in *New York Times Co.* Thus, the fact there was an in camera review in our case does not render inapplicable the rule stated in *New York Times Co.* that "a judgment of contempt is a prerequisite for writ relief," because one of the reasons for that rule is that "[a]llowing relief before a judgment of contempt would violate the unambiguous language of the shield law." (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at pp. 459, 461.)

The *New York Times Co.* court also noted another reason for its rule. "Premature relief would also allow newspersons to avoid the responsibility of choosing between disclosing information or being held in contempt. A newsperson would have no incentive to make that choice until after a decision by a reviewing court. The result would be an increased burden on reviewing courts." (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at pp. 459-460.)

The Supreme Court concluded: "We hold that a newsperson's petition for extraordinary relief is premature until a judgment of contempt has been

entered." (*New York Times Co.* v. *Superior Court*, *supra*, 51 Cal.3d at p. 460, fn. omitted.)

The Supreme Court further stated the trial court should stay its contempt judgment to allow the contemner newsperson sufficient time in which to seek writ relief if the trial court believes there is any colorable argument the newsperson can make against the contempt adjudication. (*New York Times Co.* v. *Superior Court*, *supra*, 51 Cal.3d at p. 460.) If the trial court declines to issue a stay, the reviewing court should do so pending its decision whether to issue an extraordinary writ. (*Ibid.*)

Although the petition was premature, the *New York Times Co.* court nevertheless reached the merits "without suggesting any exception to the rule that a judgment of contempt is a prerequisite for writ relief." (*New York Times Co.* v. *Superior Court*, *supra*, 51 Cal.3d at pp. 460-461.) The Supreme Court noted the party seeking discovery had not objected to the prematurity and, more importantly, the Supreme Court had simultaneously granted review both in *New York Times Co.* and in *Delaney* v. *Superior Court*, *supra*, 50 Cal.3d 785, to decide important issues as to the scope and operation of the shield law. (*New York Times Co.* v. *Superior Court*, *supra*, 51 Cal.3d at p. 461.)

Neither of these circumstances are present in the instant case, and we therefore apply "the rule that a judgment of contempt is a prerequisite for writ relief." (*New York Times Co.* v. *Superior Court*, *supra*, 51 Cal.3d at p. 461.)

Here, there was no adjudication of contempt, and therefore the writ petition is premature insofar as it seeks to litigate the shield law.

Citing *People* v. *Sanchez* (1995) 12 Cal.4th 1, 54 [47 Cal.Rptr.2d 843, 906 P.2d 1129], KOVR argues this court should reach the substantive issues because "the issues are fully joined . . . ." That case is distinguishable. In *Sanchez*, a criminal defendant on appeal from a death penalty judgment, argued the trial court erred in *granting* shield law protection from contempt to a newsperson who testified during trial, thereby precluding the defense from eliciting testimony from the newsperson regarding unpublished statements made by the defendant during interviews. (*People* v. *Sanchez*, *supra*, 12 Cal.4th at p. 50.) *On appeal from the judgment*, the defendant argued the newsperson's assertion of the shield law was premature because the court had not adjudged him in contempt. (*Id.* at p. 54.) The defendant relied on *New York Times Co.* (*Ibid.*) As noted by KOVR in the case before us, *Sanchez* said the finding of prematurity in *New York Times* was "based on the

practical concern that precontempt relief would frustrate the trial court's ability to determine whether the immunity should apply in the first instance." (*People* v. *Sanchez, supra,* 12 Cal.4th at p. 55.) *Sanchez* held *New York Times Co.*'s practical concern about depriving trial courts of the opportunity to decide issues in the first instance did not foreclose a claim of immunity in the trial court by a nonparty witness during cross-examination. (*People* v. *Sanchez, supra,* 12 Cal.4th at p. 55.) By invoking immunity while on the witness stand, the newsperson made the choice between disclosing the information or being held in contempt. (*Ibid.*)

Although *Sanchez* focused on the practical concern of adequate factual records as a prerequisite for review, that does not mean this is the only concern, nor does it mean that whenever there is an adequate factual record, the reviewing court should entertain a petition for writ relief in contravention of the "rule that a judgment of contempt is a prerequisite for *writ relief.*" (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 461, italics added.) *Sanchez* did not involve a petition for extraordinary writ relief where a trial court had denied a claim of shield law protection. It involved an appeal from a judgment following trial where the trial court had ruled the newsperson was not required to disclose the information.

Thus, *Sanchez* is not controlling here, because it did not involve any issue of prematurity of a petition for extraordinary writ relief, unlike the case before us.

KOVR also argues we should reach the substantive issues because the People's argument would seem to envision this court's directing the trial court to return the videotape to KOVR for the sole purpose of the media's "choosing" contempt—a result which assertedly would require the custodian of records, the subpoenaing party, and the courts "to endure the unnecessary risk that the subpoenaed materials might be lost or damaged." KOVR cites nothing suggesting any inordinate risk of loss or damage in this case.

KOVR thus presents no reason for us to depart from the Supreme Court's "rule that a judgment of contempt is a prerequisite for writ relief." (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 461.)

The People argue the alternative writ should be discharged, and no peremptory writ should issue. In the People's view, the issue here is not prematurity so much as *inapplicability* of the shield law in the absence of a contempt order. In this case, however, there is an ambiguity as to whether

the trial court itself intends to turn over the videotape to the prosecution. Thus, as indicated, the court order stated: "The court hereby denies KOVR's Motion to Quash and orders that EXHIBIT C be unsealed, but stays the execution of that order . . . . KOVR is further ordered to provide a complete copy of the unedited interview in continuous sequence at the [next court hearing]."

Thus, the court ordered "unsealed" the videotape which the court apparently retains in its possession, but the court also ordered KOVR to produce a copy of the tape. KOVR does not claim it has no copies of the tape and is thus incapable of complying with the court order.

We believe issuance of a writ is necessary to provide KOVR with the opportunity to choose whether to disclose the tape or face contempt, since as we have explained, KOVR has not waived the shield law. In the event KOVR chooses to face contempt, and in the further event that the trial court enters a contempt judgment, KOVR may then pursue its remedy.

We do not believe this is a meaningless exercise. As the Supreme Court has noted, "Premature relief would also allow newspersons to avoid the responsibility of choosing between disclosing information or being held in contempt. A newsperson would have no incentive to make that choice until after a decision by a reviewing court. The result would be an increased burden on reviewing courts." (*New York Times Co.* v. *Superior Court, supra,* 51 Cal.3d at pp. 459-460.) Thus, a newsperson faced with a contempt order may decide instead to abide by a court order for disclosure of information, thereby conserving resources of the reviewing courts. We will not assume that a newsperson will inevitably choose contempt.

We conclude the writ petition should be denied as premature insofar as it seeks resolution of substantive questions concerning the shield law. We therefore need not reach the parties' other arguments concerning the propriety of the remedy or the merits of the dispute as to whether the prosecution in a criminal proceeding can have a constitutional interest sufficient to require disclosure of information otherwise protected by the shield law, and if so, what showing must be made.

DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its July 19, 1996, order and to enter a new order giving petitioners the

opportunity to choose to be held in contempt or to disclose the disputed materials. The stay previously issued by this court is dissolved. The parties shall bear their own costs.

Sparks, Acting P. J., and Morrison, J., concurred.