Filed 4/4/22; Modified and Certified for Partial Publication 4/27/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIC G. SWALLOW, | C089329 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 34-2016-80002402-CU-WM-GDS) |
| CALIFORNIA GAMBLING CONTROL COMMISSION, | |
| Defendant and Appellant. | |

After a hearing before an administrative law judge (ALJ) and review by appellant California Gambling Control Commission (Commission), the Commission revoked and refused to renew the gambling license of cross-appellant Eric G. Swallow. The

Commission also imposed a $13,672,000 monetary penalty and $127,880 in costs against Swallow. Swallow petitioned the trial court for a writ of mandate, challenging the revocation and nonrenewal of his gambling license, the amount of the monetary penalty, and the costs. The trial court granted Swallow's petition in part and denied it in part. It concluded the Commission did not violate Swallow's due process rights when it revoked and refused to renew Swallow's gambling license, except that the Commission may have relied on unproven misconduct. The trial court therefore remanded to the Commission "to ensure that Swallow is not disciplined based on misconduct that was not proven." The trial court also concluded the amount of the monetary penalty imposed by the Commission was not supported by law, and the costs could only be assessed by the ALJ on remand. It therefore vacated the penalty and costs imposed and remanded for the Commission to redetermine the amount of the penalty and to refer the issue of costs to the ALJ.

Both the Commission and Swallow appeal the judgment of the trial court. The Commission contends (1) the trial court erred by ruling that Business and Professions Code section 19930, subdivision (c) limits fines *and* penalties to $20,000 for each violation of the Gambling Control Act or associated regulations.[1] For his part, Swallow contends (2) the Commission did not have jurisdiction to revoke Swallow's gambling license, (3) the Commission denied Swallow a fair hearing, thus violating his due process rights, (4) the Commission's factual findings are not supported by substantial evidence, and (5) the trial court improperly remanded the issue of costs for further proceedings.

---

[1] Most of the statutory provisions at issue in this case are found in the Gambling Control Act (Act). (Bus. & Prof. Code, div. 8, ch. 5; § 19800.) Undesignated statutory references are to the Business and Professions Code. Hereafter, we will refer to section 19930, subdivision (c) as section 19930(c).

We conclude (1) section 19930(c), when considered within the statutory and regulatory framework of the Act, does not authorize the $13,672,000 monetary penalty, (2) the Commission had jurisdiction to revoke Swallow's gambling license, (3) the Commission did not violate Swallow's due process rights, (4) Swallow fails to present a proper argument challenging the sufficiency of the evidence, and (5) the trial court properly remanded the issue of costs for further proceedings.[2]

We will modify the judgment granting the peremptory writ of mandate to order the Commission to reconsider the monetary penalty in a manner consistent with this opinion instead of the trial court's order. We will affirm the judgment as modified.

## BACKGROUND[3]

"Public trust and confidence can only be maintained by strict and comprehensive regulation of all persons . . . related to the operation of lawful gambling establishments . . . ." (§ 19801, subd. (h).) "All gambling operations, all persons having a significant involvement in gambling operations, all establishments where gambling is conducted, and all manufacturers, sellers, and distributors of gambling equipment must be licensed and regulated to protect the public health, safety, and general welfare of the residents of this state as an exercise of the police powers of the state." (§ 19801, subd. (i).)

---

[2] Swallow's request for judicial notice, filed March 20, 2020, of legislative history documents is granted, except as to exhibits 2, 3, and 6, which pertain to bills not passed by the Legislature.

[3] In his recounting of the facts and the procedural history of this case, Swallow makes numerous claims of error by the Commission and the trial court. To the extent these claims of error were not included in the legal argument, not supported by legal authority, or not adequately stated in an argument heading or subheading, we do not address them. (See Cal. Rules of Court, rule 8.204(a)(1)(B); see also *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 [discussing forfeiture of issues not properly raised].)

3

The Commission has jurisdiction over the operation and supervision of gambling establishments and over all persons or things having to do with the operations of gambling establishments. It issues gambling licenses and may also suspend or revoke the licenses. (§§ 19811, 19870, 19930.) The Department of Justice, through its Bureau of Gambling Control (Bureau), investigates gambling license applicants, monitors the conduct of licensees, and initiates and prosecutes disciplinary actions against licensees before the Commission. (§§ 19826, 19868, 19930.)

Under the Act, "[e]very person . . . who receives, directly or indirectly, any compensation or reward, or any percentage or share of the money or property played, for keeping, running, or carrying on any controlled game in this state, shall apply for and obtain from the commission, and shall thereafter maintain, a valid state gambling license, key employee license, or work permit . . . ." (§ 19850.)

Beginning in 2007, Garden City, Inc., owned by Swallow with Peter and Jeanine Lunardi, operated the M8trix Casino in San Jose. Garden City, Swallow, and the Lunardis were all licensed by the Commission. The licenses were renewed every two years.

In 2008, Swallow and the Lunardis formed three limited liability companies in Nevada: Profitable Casino (owned by Swallow), Potere (owned by the Lunardis), and Dolchee (owned by Swallow and the Lunardis). The related entities (that is, related to Garden City and the M8trix gambling establishment) did not hold licenses from the Commission. Each of these related entities had contracts to provide services or licenses to Garden City. The contracts between Garden City and the related entities were for Profitable Casino to provide software for various casino operations, Dolchee to license card games, and Potere to provide general business consulting. Garden City agreed to pay each related entity $400,000 or more per month under the contracts. In 2012, for example, Garden City paid almost $12 million to Dolchee and more than $3.3 million each to Profitable Casino and Potere. Between 2009 and 2013, Garden City paid the

4

related entities more than $81 million. The trial court noted that the parties disputed the nature of the services actually provided by the related entities in exchange for the payments.

In 2012, Swallow filed an application with the Commission to operate another gambling establishment, Hollywood Park, in Inglewood. In connection with that application, the Commission and Bureau asked for more information concerning the dealings between Garden City and the related entities. Swallow provided more than 500 pages of documents. He eventually withdrew his application to operate the Hollywood Park gambling establishment; however, as the trial court noted, "his responses to the Commission and the Bureau regarding that application lie at the heart of this case."

In 2014, the Bureau filed an accusation against Garden City, Swallow, and the Lunardis as respondents, seeking to revoke or suspend their gambling licenses and to impose fines. The Bureau stated in the accusation: "This case seeks to discipline Respondents' licenses - by revocation, suspension, and/or fine as appropriate - for persistent and repeated violations of, and lack of suitability for continued licensing under, the [Act] and the regulations adopted pursuant to the Act. As alleged in this Accusation, Respondents provided untrue and misleading information to the Bureau and others, failed to provide information requested by the Bureau, engaged in self-dealing to siphon off monies for themselves and reduce reported net income, and benefited from payments prohibited by the Act. The acts and omissions alleged in this Accusation are inimical to the public health, safety, and welfare; those acts and omissions demonstrate that Respondents are not persons of good character, honesty, and integrity. Their acts and omissions, as alleged in this Accusation, pose a threat to the effective regulation and control of controlled gambling, and create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and activities in carrying on the business and financial arrangements incidental to the conduct of controlled gambling. Respondents' acts and omissions not only impeded the Bureau's investigation and fact gathering, but also

5

effectively reduced potential payments to charities located in the City of San Jose. Respondents are not suitable or qualified for continued licensure; therefore, each of their licenses should be disciplined."

The Bureau alleged the related entities did not provide invoices for the payments from Garden City, and Garden City accounted for the payments to the related entities as expenses rather than as dividends or distributions to the owners. Garden City made payments to the related entities based on its available cashflow, essentially reducing Garden City's net income to zero and thus reducing its tax liability. While the Bureau did not allege that the flow of funds to the related entities was illegal or violated the Act or that the related entities were required to be licensed, the Bureau maintained that the respondents were subject to discipline on various grounds such as the manner of operating the gambling establishment (§ 19823), lack of good character (§ 19857), and failure to provide information to the Bureau (§ 19859). As to Swallow, the Bureau alleged his license should be revoked or suspended because he provided false or misleading information and failed to provide requested documentation in his Hollywood Park application.

The Lunardis and Garden City entered into a stipulated settlement, admitting violations of the Act and agreeing to pay a $1.5 million fine and $275,000 in costs. They were allowed to retain their gambling licenses.

The case against Swallow was heard by an ALJ. The ALJ found Swallow provided false and misleading information and failed to provide requested information and documentation to the Bureau. Based on the findings, the ALJ found that Swallow was disqualified for licensure and ordered that Swallow's license be revoked and that he pay a $430,000 fine, which was the maximum $20,000 fine each for 21.5 violations of the Act and regulations. As the trial court noted, the parties do not explain how a half-violation could be committed.

6

The Commission did not adopt the ALJ's decision. Like the ALJ, the Commission found Swallow provided false and misleading information, failed to provide information and documentation to the Bureau, and was disqualified for licensure. But instead of a $430,000 fine, the Commission imposed a $13,672,000 monetary penalty and $127,880 in costs.

Swallow filed a petition for writ of mandate in the trial court, challenging the Commission's decision on numerous grounds. After briefing and argument, the trial court determined that the Commission did not abuse its discretion in revoking Swallow's gambling license and denying his application to renew it. However, the trial court concluded the Commission's imposition of a $13,672,000 monetary penalty exceeded the limit imposed by the Legislature and that the Commission did not have jurisdiction to assess costs or to discipline Swallow based on unproven misconduct. The trial court therefore granted the petition in part, denied it in part, and remanded the matter to the Commission for further proceedings consistent with the trial court's order.

Swallow and the Commission both filed a notice of appeal.

STANDARD OF REVIEW

This case reaches us as a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) and for traditional mandate (Code Civ. Proc., § 1085) because it concerns both the revocation of Swallow's gambling license and the refusal to renew his license. The Commission's revocation of a gambling license is reviewed by administrative mandate: "Any person aggrieved by a final decision or order of the commission that limits, conditions, suspends, or revokes any previously granted license or approval, made after hearing by the commission, may petition the Superior Court for the County of Sacramento for judicial review pursuant to Section 1094.5 of the Code of Civil Procedure . . . ." (§ 19932, subd. (a).) On the other hand, the Commission's refusal to grant or renew a gambling license is reviewed by traditional mandate: "A decision of the commission . . . denying a license . . . may be reviewed by petition pursuant to

7

Section 1085 of the Code of Civil Procedure.  Section 1094.5 of the Code of Civil Procedure does not apply to any judicial proceeding held to consider that petition, and the court may grant the petition only if the court finds that the action of the commission was arbitrary and capricious, or that the action exceeded the commission's jurisdiction." (§ 19870, subd. (f).)

"Under both Code of Civil Procedure sections 1085 and 1094.5, we evaluate the agency's exercise of judgment for abuse of discretion.  [Citations.]  [There is] 'no practical difference between the standards of review applied under traditional or administrative mandamus.'  [Citation.]"  (*Southern California Cement Masons Joint Apprenticeship Committee v. California Apprenticeship Council* (2013) 213 Cal.App.4th 1531, 1549.)

DISCUSSION

I

The Commission's contentions on appeal all relate to the trial court's ruling that section 19930(c) does not support the Commission's imposition of a $13,672,000 monetary penalty against Swallow.  The Commission contends the trial court erred by ruling that section 19930(c) limits fines *and* penalties to $20,000 for each violation of the Act or regulations.[4]

We analyze the issue somewhat differently than the trial court.  While the trial court equated fines and monetary penalties, we conclude there is no need to equate them because the statutory and regulatory framework of the Act and regulations adopted under the Act (hereafter, the Act and regulations) identify limits for monetary penalties.

---

[4] The Commission argues the Constitution places the only limit on the monetary penalties the Commission imposes.  We need not reach the question of constitutional limits because, as we explain, the Act and regulations do not authorize the Commission's imposition of a $13,672,000 monetary penalty in this case.

8

Construing section 19930(c) to authorize the $13,672,000 monetary penalty would be inconsistent with the statutory and regulatory framework.

When construing a statute, as we must in this case, we consider the matter de novo. We give the agency's interpretation deference if it is appropriate under the circumstances, such as when the statute is complex or technical. (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 381.) While an administrative interpretation of a statute is entitled to great weight, it must be rejected if it is "erroneous or unauthorized by the applicable laws." (*Bekins Van Lines, Inc. v. State Board of Equalization* (1964) 62 Cal.2d 84, 91.) We must attempt to harmonize all parts of the statutory and regulatory framework as a whole and avoid an interpretation that would render any part meaningless. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743; *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231.)

As noted, the ALJ recommended fines totaling $430,000 for 21.5 violations of the Act, $20,000 for each violation. The Commission rejected the recommendation as inadequate and, instead, imposed a monetary penalty of $13,672,000. In its decision, the Commission wrote that section 19300(c) provides a limitation on fines but not on monetary penalties, reasoning: "It is apparent that the [L]egislature authorized fines per violation with a limit to remedy specific behavior whereas penalties were not correspondingly limited. Instead, penalties were meant to further other purposes of the [Act]."

Section 19930(c) provides: "In addition to any action that the commission may take against a license, permit, finding of suitability, or approval, the commission may also require the payment of fines or penalties. However, no fine imposed shall exceed twenty thousand dollars ($20,000) for each separate violation of any provision of this chapter or any regulation adopted thereunder."

9

Invoking canons of statutory construction, the Commission argues we must give the words of the statute their usual meaning and also give effect to both the word "fines" and the word "penalties" in section 19930(c). The Commission asserts that if we do so, the second sentence of section 19930(c) limits fines only and not penalties. According to the Commission, penalties are unlimited under the statute. In addition, the Commission claims fines are imposed for specific violations of the Act and regulations, whereas monetary penalties are imposed for activities that do not violate express provisions of the Act and regulations.

The statutory and regulatory framework of the Act and regulations does not support the Commission's interpretation. For example, section 19841 of the Act authorizes regulations that "[r]equire owner licensees to report and keep records of transactions . . . ." (§ 19841, subd. (d).) And section 19943 authorizes a "monetary penalty" for violation of those regulations and provides limits for those penalties according to how many times the person or business has violated the pertinent regulations (ranging from $10,000 for a first proceeding to $100,000 for two or more prior proceedings).[5] (§ 19943, subd. (b).)

Several of the Commission's own regulations also provide for a "fine" or a "monetary penalty" for specific violations of the Act or regulations, and each has a limit

---

[5] "Any person or business described in subdivision (a), with actual knowledge of the requirements of regulations adopted by the commission pursuant to subdivision (d) of Section 19841, that knowingly and willfully fails to comply with the requirements of those regulations shall be liable for a monetary penalty. The commission may impose a monetary penalty for each violation. However, in the first proceeding that is initiated pursuant to this subdivision, the penalties for all violations shall not exceed a total sum of ten thousand dollars ($10,000). If a penalty was imposed in a prior proceeding before the commission, the penalties for all violations shall not exceed a total sum of twenty-five thousand dollars ($25,000). If a penalty was imposed in two or more prior proceedings before the commission, the penalties for all violations shall not exceed a total sum of one hundred thousand dollars ($100,000)." (§ 19943, subd. (b).)

10

on the amount to be imposed. (See, e.g., Cal. Code Regs., tit. 4, §§ 12304 ["fine" against manufacturer or distributor limited to $20,000 for each violation]; 12466, subd. (d) ["monetary penalty" against cardroom for failure to provide certain records limited to $1,000 for each violation]; 12566 ["monetary penalty" against cardroom for certain violations with limits on the penalty ranging from $50 to $10,000 for each violation depending on the circumstances].)

In addition, section 12554, subdivision (d) of the Commission's regulations provides that the Commission may impose a "fine or monetary penalty" under sections 19930(c) and 19943, subdivision (b) of the Business and Professions Code if it finds (1) a violation of the Act or regulations, (2) a violation of any other law related to gambling, (3) a violation of a previously imposed disciplinary or license condition, or (4) a violation of "laws whose violation is materially related to suitability for a license, registration, permit, or approval."[6] (Cal. Code Regs., tit. 4, § 12554, subd. (d) & (d)(5).) The regulation does not allow imposition of a monetary penalty for conduct that falls outside its express enumerated scope. And as we have explained, section 19943, subdivision (b) of the Business and Professions Code sets limits on the penalty ranging from $10,000 to $100,000 depending on the circumstances.

The size of the monetary penalty in this case appears to be unprecedented. In its decision, the Commission noted that the penalty in this case is "different in magnitude than past fines and penalties." In oral argument for this appeal, the Attorney General admitted there has been no other case like this in which fines were capped but a much

_____

[6] "Upon a finding of a violation of the Act, any regulations adopted pursuant thereto, any law related to gambling or gambling establishments, violation of a previously imposed disciplinary or license condition, or laws whose violation is materially related to suitability for a license, registration, permit, or approval, the Commission may do any one or more of the following: [¶] . . . [¶] (5) Impose any fine or monetary penalty consistent with Business and Professions Code sections 19930, subdivision (c), and 19943, subdivision (b) . . . ." (Cal. Code Regs., tit. 4, § 12554, subd. (d).)

larger penalty was imposed.  Apparently recognizing that this has never been done before, the Commission's order rejecting the ALJ's proposed decision and setting a calendar for written arguments asked the parties to address the following question:  "Are penalties distinguishable from fines under the Gambling Control Act and are penalties limited in any fashion?"  The Bureau requested a total of $12,950,000 in fines and penalties and encouraged the Commission to make its decision precedential under Government Code section 11425.60, subdivision (b) because "fines are capped at $20,000 per violation in an industry awash with cash."

The Commission ultimately reasoned that Swallow's conduct could only be viewed as "globally" out of compliance with the Act and addressed as such.  It asserted that the Act gives it "broad discretion in assessing penalties to protect the public health, safety, and welfare" and cited section 12554, subdivision (d)(7) of the regulations as showing that a large penalty is sometimes appropriate and authorized.  But section 12554, subdivision (d)(7) specifies that such a penalty must be consistent with the guidelines of section 19943, subdivision (b) of the Business and Professions Code.  As we have explained, section 19943, subdivision (b) sets penalty limits ranging from $10,000 to $100,000 depending on the circumstances.  Moreover, section 12554, subdivision (d)(7) is different than section 19930(c) because section 12554, subdivision (d)(7) applies in lieu of a suspension and the penalty is imposed only for the number of days the suspension is stayed.  Because no such circumstance exists in this case, the Commission noted in footnote 18 of its decision that section 12554, subdivision (d)(7) does not apply here, and the Bureau agreed.  Section 12554, subdivision (d)(7) does not support the $13,672,000 monetary penalty in this case.

The Commission cited other provisions of the Act and the Penal Code to support its conclusion that a large monetary penalty is appropriate here because Swallow's conduct was egregious.  However, those provisions do not support its argument that its statutory authority to impose a monetary penalty is unlimited.  For example, it cited

12

section 19850 of the Act, which sets forth the licensing requirements for those who participate in a gambling enterprise. Section 19850 provides that if a violation of the statute is criminally prosecuted, "the punishment shall be as provided in Section 337j of the Penal Code." (§ 19850.) Penal Code section 337j provides for a maximum fine of $10,000. (Pen. Code, § 337j, subd. (d).)

Although section 19930(c) does not itself expressly mention a limit on monetary penalties, the statutory and regulatory framework of the Act and regulations identifies a range of fine and penalty limits in the neighborhood of between $50 and $20,000, with a higher penalty up to $100,000 authorized in specified circumstances in subsequent proceedings. We decline to interpret section 19930(c) in a manner inconsistent with those limits.

The size of the monetary penalty imposed by the Commission was unauthorized, and the matter must be remanded to the Commission with directions to reconsider its decision consistent with this opinion.

## II

Swallow contends the Commission did not have jurisdiction to revoke his gambling license because his license had already been renewed by operation of law.

Swallow's gambling license was set to expire in February 2014, and Swallow filed a renewal application well before the expiration date. As allowed by statute, the Commission extended the expiration date to May 31, 2014, without acting on the renewal application. (§ 19876, subd. (c) [allowing Commission to extend expiration date up to 180 days].) On May 29, 2014, the Commission acknowledged that the Bureau had filed an accusation against Swallow. It therefore voted to consolidate the renewal application with the accusation and refer both matters for a hearing. The Commission did not grant or deny Swallow's application to renew the gambling license before it expired on May 31, 2014.

13

Swallow claims that, because the Commission did not deny his application to renew his gambling license, his gambling license automatically renewed. For this proposition, Swallow cites generally to section 19876, which provides that the Commission "shall" act on a licensee's renewal application prior to expiration of the license. But the statute does not say what happens if the Commission does not deny the application during that time (§ 19876, subd. (b)), and thus does not support Swallow's claim that a license renews automatically if the Commission does not deny the renewal application. Swallow has not met his burden on appeal.

In any event, section 19876, subdivision (a) provides that the Commission has power to "deny, revoke, suspend, condition, or limit any [gambling] license . . . ." While Swallow argues that a license is a vested property interest that cannot be taken away based on conduct preceding the issuance of the license (see *Barrett v. Board of Osteopathic Examiners* (1935) 4 Cal.App.2d 135, 139 [right to practice medicine a vested property right]), a gambling license is expressly a revocable privilege, not a vested property right. "Any license or permit issued, or other approval granted pursuant to this chapter, is declared to be a revocable privilege, and no holder acquires any vested right therein or thereunder." (§ 19801, subd. (k).) Therefore, a gambling license is always revocable, regardless of whether the license was renewed during the time the Commission was considering discipline against the license.

Swallow fails to establish that the Commission did not have jurisdiction to revoke his gambling license.

### III

Swallow next contends he was denied his due process right to a fair hearing. Specifically, he claims (A) the ALJ shifted the burden of proof to Swallow after the hearing, (B) revocation of his gambling license was based on uncharged or unproven conduct, (C) the Bureau failed to provide evidence to Swallow, (D) the Commission failed to give the ALJ's credibility determinations great weight, (E) the Bureau and

14

Commission engaged in improper ex parte communications that violated due process, and (F) the due process violations, taken together, require us to reinstate his gambling license.

In administrative proceedings, "[t]he agency shall give the person to which the agency action is directed notice and an opportunity to be heard, including the opportunity to present and rebut evidence." (Gov. Code, § 11425.10, subd. (a)(1).) Having considered Swallow's claims, we conclude (A) any error in shifting the burden of proof was harmless, (B) review of whether Swallow is being disciplined based on uncharged and unproven misconduct is premature because the trial court granted the petition for writ of mandate on that issue, (C) Swallow's contention that the Bureau failed to provide evidence to him is unsupported, (D) the Commission did not violate Swallow's due process rights by failing to give the ALJ's credibility determinations great weight, (E) the Bureau and Commission did not engage in prejudicial ex parte communications in violation of due process, and (F) Swallow's allegations do not require reinstatement of his gambling license.

A

It appears that, before the administrative hearing, the Bureau and Swallow stipulated that the Bureau would bear the burden of proof on both the license revocation and license renewal issues. Addressing the stipulation regarding the burden of proof, the Commission stated that section 19856 does not allow the Commission to treat applicants differently, and acceptance of the stipulation by the Bureau and ALJ was error. Swallow contends the Commission should have accepted the stipulation because it correctly stated the burden of proof.

Although Swallow claims the burden of proof mattered on some of the factual issues, the Commission concluded the Bureau met the stipulated burden. To obtain reversal for a violation of due process, a party must establish both a violation and prejudice. (*Hipsher v. Los Angeles County Employees Retirement Assn.* (2020)

15

58 Cal.App.5th 671, 702.) Because the Commission concluded the Bureau met the stipulated burden, there was no prejudice.

Swallow further argues that shifting the burden of proof after the hearing created an underground regulation. Once again, however, the argument is without merit because the Commission concluded the Bureau met the stipulated burden.

B

Swallow next contends the Commission erred by disciplining him based on uncharged and unproven misconduct.

In the trial court, Swallow asserted the Commission based its discipline of him on uncharged or unproven allegations. The trial court found some merit in this contention. In granting the petition for writ of mandate in part, the trial court "order[ed] the Commission . . . to ensure that Swallow was not disciplined based on misconduct that was not proven." We need not recount the allegations or facts on which the trial court based its order because it is sufficient to say that, because the trial court remanded the matter to the Commission on the issue of whether the Commission disciplined Swallow based on unproven allegations and conduct, review of that issue is premature and not reviewable as part of this appeal.[7] (See *Sci-Sacramento, Inc. v. Superior Court* (1997) 54 Cal.App.4th 654, 667 (*Sci-Sacramento*) [refusing to review issues that were not yet ripe].)

Swallow asserts he "had a due process right not to have to defend himself and his livelihood against statutory violations with which the Bureau never charged him, or face

---

[7] At oral argument, Swallow asserted we should identify the uncharged or unproven allegations so the Commission will know on remand that it cannot base its decision on those specific allegations. But Swallow did not make this request in the trial court or in his briefing on appeal. Accordingly, we do not consider it. (See *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 [court not required to consider matters raised for the first time at oral argument].)

discipline based on conduct the Bureau failed to prove against him.  As such, the license revocation based in large part on such uncharged or unproven allegations should be reversed and Swallow's *license reinstated*."  (Italics added.)  As noted, the trial court granted the petition for writ of mandate in part and remanded to the Commission "to ensure Swallow is not disciplined based on misconduct that was not proven."  Swallow fails to explain why we must reinstate his gambling license and why the trial court's remedy is inadequate for the alleged error.  He also does not provide argument or authority that the trial court was required to order reinstatement of Swallow's license.  (See *Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 (*Cairns*) [failure to provide argument or authority forfeits contention].)  Because issues concerning the factual foundation for discipline are the subject of the remand to the Commission, the issue is not ripe for review.

C

Swallow further contends:  "The [Bureau] violated Government Code duties to provide all evidence to Swallow before the [ALJ] hearing, violating Swallow's due process rights."  In subheadings, Swallow claims (1) the Bureau coerced favorable testimony from a witness, and (2) Swallow discovered after the administrative hearing and Commission decision that the Bureau did not turn over all relevant evidence.

Swallow cites to findings by the Commission that the Bureau, acting through a Deputy Attorney General, prevented Garden City from paying money due to Bryan Roberts, an information technology contractor who provided services to Garden City, until Roberts agreed to come to California from Texas for an interview with the Bureau.  Based on this evidence, Swallow claims the Bureau violated its duty under the Government Code "to turn over relevant materials regarding [the Bureau's] efforts to coerce favorable testimony from Roberts . . . ."  Swallow relies generally on Government

17

Code section 11507.6, which provides for discovery requests in administrative proceedings.**8**

In separate litigation between Swallow and Roberts, Swallow became aware of correspondence from the Deputy Attorney General to Roberts concerning Roberts's interview. The Deputy Attorney General informed Roberts that he was working with Garden City to arrange Roberts's trip to California to be interviewed and wrote: "I would like to show Garden City's attorneys that your prospective statement under oath will be helpful to both the Bureau of Gambling Control and Garden City . . . ." Swallow claims that this and other correspondence not previously divulged by the Bureau supports his argument that Roberts was coerced and should have been turned over to him in discovery. The trial court rejected this claim based on its determination the correspondence was not discoverable because it was attorney work product. Swallow argues the trial court's determination was an abuse of discretion -- that it was not attorney work product and should have been considered. For this proposition, however, Swallow offers no authority. In fact, he offers no citation at all for what is attorney work product and whether such evidence is discoverable and should be considered in this type of litigation. Because Swallow does not support his argument with citation to supporting authority, the argument is forfeited. (*Cairns, supra*, 188 Cal.App.4th at p. 949.) We will not act as counsel for a party to construct a proper and persuasive argument. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [appellate court not required to construct legal arguments for party.) Moreover, we do not address the claim asserted in oral argument that a privilege was waived.

Accordingly, we conclude Swallow's contention that the Bureau violated Swallow's due process rights by not providing evidence is without merit.

---

**8** Swallow inaccurately refers to this statute as Business and Professions Code section 11507.6. It is found, instead, in the Government Code.

18

D

In addition, Swallow argues the Commission violated his due process rights by not giving the ALJ's credibility determinations great weight, citing Government Code section 11425.50, subdivision (b). Although Government Code section 11425.50, subdivision (b) requires a reviewing court to give an ALJ's credibility determinations great weight under some circumstances, the statute does not prohibit the Commission from drawing its own inferences from the totality of the evidence. (See Law Revision Commission Comments to Gov. Code, § 11425.50.) Swallow's contention lacks merit.

E

Under a general heading claiming the Bureau and Commission violated Swallow's constitutional rights, Swallow contends the Bureau and Commission violated his due process rights by engaging in improper ex parte communications.

Because the Bureau acts as prosecutor and the Commission acts as decisionmaker in proceedings on gambling licenses, ex parte communications between the Bureau and the Commission about the substance of the proceedings are prohibited. (Gov. Code, § 11430.10, subd. (a); *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 8.) But only prejudicial ex parte communications require reversal of the decision. (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1040.)

Swallow argues that two communications between the Bureau and the Commission constituted ex parte communications. The trial court discussed this argument (more comprehensively than Swallow presents it to us in his appellate briefing) and rejected it in an analysis with which we agree.

The trial court wrote: "First, a brief email exchange between a Commissioner and the Bureau's counsel. The subject line reads 'Petitioners to Terminate TPPPS contracts.' [fn. omitted.] The Commissioner's email states, in full: 'If it is ok with Sars please provide these to me in Word, thanks. PS--looking forward to the other 80 or so such

19

petitions.'  The Bureau's counsel responded:  'Per your request.  These do not contain the exhibits, which are PDFs.'  The Bureau's counsel attached two documents to his email identified as 'Petition(HP).docx; Petition.docx.'  [fn. omitted.]  Swallow fails to explain how this email exchange has anything to do with this case."

The trial court continued:  "Second, Swallow cites an email a different Commissioner sent to the Bureau's counsel attaching an article entitled 'Former California Gambling Tsar Accused Of Conflict Of Interest.'  The email states in full:  'This is FYI, understanding this is a subscription service.'  Swallow claims the article is about this case.  Although it does appear to mention this case, it does not discuss it.  Instead, it is about an accusation issued against a former Bureau director for allegedly violating state conflict of interest and confidentiality laws.  According to the article, the director 'may have compromised [Bureau] investigations, including an ongoing probe of the M8trix Casino in San Jose, which is accused of diverting profits to shell companies to avoid taxes.'  M8trix Casino refers to Garden City.  The article states the director 'acquired and disclosed confidential agency documents and information to card room clients, including M8trix, before and after leaving the [Bureau].'  The article also states the director went to work for Garden City as a consultant the day after he resigned from the Bureau.

"Swallow fails to convince an email from a Commissioner to the Bureau's counsel attaching an article about a different accusation is a prohibited ex parte communication about the merits of this case."  (Record citations omitted.)

We agree that Swallow fails to establish that these asserted ex parte communications violated the Government Code or his due process rights.  And, in any event, he fails to establish prejudice.

Swallow also asserts that a Bureau employee, who had testified as a Bureau witness, went to work for the Commission during the pendency of this action.  But the

20

Commission segregated the employee from this case, and Swallow fails to present or cite any evidence to the contrary.

There were no prejudicial ex parte communications.

F

Swallow contends the due process violations, taken together, require reinstatement of his gambling license. Having found no prejudicial due process violations, we need not consider this contention further.

IV

Swallow claims the Commission abused its discretion by making findings unsupported by substantial evidence when it revoked and refused to renew his gambling license. He argues that the Commission relied on "objected-to hearsay or discredited evidence" and also on evidence the Commission found unproven in making its findings. In support of his argument, Swallow presents an attack on certain evidence, claiming it was objected to or discredited.

But as the California Supreme Court has explained: " 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' [Citations.] Defendants' contention herein 'requires defendants to demonstrate that there is *no* substantial evidence to support the challenged findings.' (Italics added.) [Citations.] A recitation of only defendants' evidence is not the 'demonstration' contemplated under the above rule. [Citation.] Accordingly, if, as defendants here contend, 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and not merely their own evidence. Unless this is done the error is deemed to be waived.' (Italics added.) [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, some italics omitted (*Foreman & Clark*).)

In contending the evidence was not sufficient to support the Commission's findings, Swallow fails to present all of the evidence in the light most favorable to the

21

findings. He fails even to mention much of the evidence supporting discipline or to explain in what way the evidence was insufficient, overall, to support the discipline. Instead, he claims that some of the evidence should not have been admitted or was admitted but discredited. This is not the full recitation of the evidence required for a substantial evidence contention. Accordingly, Swallow's contention that the evidence was insufficient to sustain the Commission's findings is forfeited. (*Foreman & Clark, supra*, 3 Cal.3d at p. 881.)

Furthermore, we need not consider Swallow's various contentions about the admissibility or weight of evidence because he did not make those contentions properly under their own headings or subheadings. (Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must "[s]tate each point under a separate heading or subheading summarizing the point"]; *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [failure to comply with rule requiring that each argument be presented under a separate heading forfeits the arguments].)

V

After the conclusion of the hearing before the ALJ, the Bureau submitted its proof of costs to the ALJ for an award of costs under section 19930, subdivision (d), which provides for an award of costs to the Bureau for investigation and prosecution of the case. However, the ALJ denied the request for costs because the Bureau did not submit the proof of costs during the hearing on the substantive charges against Swallow.

"In any case in which the administrative law judge recommends that the commission revoke, suspend, or deny a license, the administrative law judge may, upon presentation of suitable proof, order the licensee or applicant for a license to pay the department the reasonable costs of the investigation and prosecution of the case." (§ 19930, subd. (d).) The Commission noted that the cost of prosecuting the case was unknowable until the case was completed and that there was no requirement to present proof of costs during the hearing before the ALJ. According to the Commission, the ALJ

22

erred by denying costs. Based on its determination that the ALJ made an error of law concerning costs, the Commission awarded the Bureau $127,880 in costs. The trial court reversed the Commission's award of costs and remanded to the Commission with leave to remand the case to the ALJ for an award of costs under the proper interpretation of the law because only the ALJ may impose costs. (§ 19930, subd. (d)(1).)

On appeal, Swallow does not defend the ALJ's mistaken interpretation of the law, but instead contends the remand to the Commission for a referral to the ALJ concerning costs violates section 19930, subdivision (d)(1). That subdivision provides: "The costs assessed pursuant to this subdivision shall be fixed by the administrative law judge and may not be increased by the commission. When the commission does not adopt a proposed decision and remands the case to the administrative law judge, the administrative law judge may not increase the amount of any costs assessed in the proposed decision."

The trial court concluded that a remand to the ALJ concerning costs would not violate section 19930, subdivision (d)(1) because the remand would be for the ALJ to reconsider imposing costs under the proper interpretation of the law, not to amend a prior award of costs. According to the trial court, "[t]he ALJ would not be impermissibly revisiting costs previously 'assessed.' Rather, the ALJ would be reconsidering her legal conclusion that costs were not available in the first instance."

We agree with the trial court that section 19930, subdivision (d)(1) does not prohibit a consideration of costs on remand by the ALJ under a proper interpretation of the law. While the statute provides that "the administrative law judge may not increase the amount of any costs assessed in the proposed decision" (§ 19930, subd. (d)(1)), the ALJ improperly did not assess costs at all. It did not determine that there were no costs; it simply determined that it did not have legal authority to assess costs. Therefore, a remand by the Commission to the ALJ to assess costs would not increase an amount of

23

costs already assessed.  Swallow's contention that a remand to the ALJ to assess costs would violate section 19930, subdivision (d)(1) is without merit.

DISPOSITION

The judgment granting the peremptory writ of mandate is modified to order the Commission to reconsider the monetary penalty in a manner consistent with this opinion instead of the trial court's order.  As modified, the judgment granting the petition in part and denying it in part is affirmed.  The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____/S/_____

MAURO, J.

We concur:

_____/S/_____

HULL, Acting P. J.

_____/S/_____,

MURRAY, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIC G. SWALLOW,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA GAMBLING CONTROL COMMISSION,<br><br>    Defendant and Appellant. | C089329<br><br>(Super. Ct. No. 34-2016-80002402-CU-WM-GDS)<br><br>ORDER MODIFYING OPINION AND GRANTING REQUEST FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen H. Sumner, Judge. Affirmed with modifications.

Grignon Law Firm, Margaret M. Grignon, Anne M. Grignon, Vakili & Leus, and Sa'id Vakili for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Sara J. Drake, Senior Assistant Attorney General, T. Michelle Laird, William P. Torngren, and William L. Williams, Jr., Deputy Attorneys General, for Defendant and Appellant.

THE COURT:

It is ordered that the opinion filed in this case on April 4, 2022, be modified as follows:

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II through V of the Discussion.

1

On page 3, remove first full paragraph beginning with "We conclude" and replace with the following (footnote 2 shall remain):

In the published portion of this opinion, we conclude section 19930(c), when considered within the statutory and regulatory framework of the Act, does not authorize the $13,672,000 monetary penalty.  And in the unpublished portion of the opinion, we conclude the Commission had jurisdiction to revoke Swallow's gambling license, the Commission did not violate Swallow's due process rights, Swallow fails to present a proper argument challenging the sufficiency of the evidence, and the trial court properly remanded the issue of costs for further proceedings.

This modification does not change the judgment.

The opinion in the above-entitled matter filed on April 4, 2022, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:


_____/S/_____
HULL, Acting P. J.


_____/S/_____
MAURO, J.


_____/S/_____,
MURRAY, J.*


_____

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2